# HAMILTON–BROWN SHOE CO. *v.* WOLF BROTHERS & CO.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 37.   Argued October 28, 29, 1915.—Decided February 21, 1916.

The words "The American Girl" as applied to women's shoes is not a geographical or descriptive term signifying that the articles are manufactured in America, or intended to be sold therein; nor does it indicate qualities or characteristics of the article.

In this case, *held* that the term "American Girl" is a fanciful designation, arbitrarily selected by a concern manufacturing shoes to desig-

nate their product, and as such it is subject to appropriation as a trade-mark for that purpose.

The record in this case shows that the term "American Girl" was legitimately appropriated and used as a trade-mark by the complainant and those under whom it claims.

The jurisdiction of this court to review judgments and decrees of the Circuit Courts of Appeals on certiorari under § 240, Jud. Code, is to be exercised sparingly and only in cases of peculiar gravity and general importance and in order to secure uniformity of decision, and the refusal of the application is in no case equivalent to affirmance.

The fact that the decree sought to be reviewed is not a final one furnishes sufficient ground for refusing the petition.

On certiorari, this court is called upon to notice and rectify any error that may have occurred in interlocutory proceedings, and is. not bound to consider that an interlocutory decree settled the law of the case because it refused to review it on certiorari.

The right to use a trade-mark is property of which the owner is entitled to exclusive enjoyment to the extent that it has been actually used, and an infringer is required in equity to account for and yield up his gains to the true owner.

In this case, *held* that one using the label "American Lady" for shoes manufactured and sold by it infringed the rights of complainant as owner of the trade-mark "American Girl."

While the decree of the court below was based on profits gained by defendant in unfair competition by using an imitation of complainant's label and not for infringement of trade-mark, as the proofs and findings were as applicable to a claim of compensation for infringing a trade-mark to which complainant is found entitled, the decree may be affirmed.

Where defendant is not an innocent infringer and an apportionment between profits attributable to infringing the trade-mark and those attributable to intrinsic merit of his own article is inherently impossible, complainant is not limited in his recovery to the former; nor is the burden on him to show what such portion of the profits was.

The owner of the trade-mark is on every principle of reason and justice entitled to so much of the profit as resulted from its use, and it is more consonant with reason and justice that he should have all the profit than that he should be deprived of any portion thereof by the fraudulent act of the infringer.

On matters of fact in estimating the profits to which complainant is

entitled there is no sufficient reason for disturbing the decree based on rulings of the master in this case.

206 Fed. Rep. 611, affirmed.

THE facts, which involve rights of the owner of a trademark and the liability of one infringing it, and other questions, are stated in the opinion.

*Mr. Luke E. Hart* and *Mr. Joseph W. Bailey,* with whom *Mr. H. S. Priest* and *Mr. Morton Jourdan* were on the brief, for petitioner.

*Mr. Lawrence Maxwell,* with whom *Mr. Simeon M. Johnson* and *Mr. Percy Werner* were on the brief, for respondent.

MR. JUSTICE PITNEY delivered the opinion of the court.

Respondent, an Ohio corporation engaged in the manufacture of shoes, filed its bill of complaint on January 29, 1906, in the Circuit Court of the United States for the Eastern District of Missouri, Eastern Division, against petitioner, a Missouri corporation engaged in the same business, seeking an injunction to restrain infringement of an alleged trade-mark for shoes consisting of the words "The American Girl," by the use of the words "American Lady" as a colorable imitation, and also unfair competition in trade, carried on by means that included the use of the latter words; and praying an accounting of damages and profits. On final hearing the Circuit Court dismissed the bill. Upon appeal, the Circuit Court of Appeals (165 Fed. Rep. 413) held that "The American Girl" was a geographical name, and, as applied to women's shoes, was descriptive merely of shoes manufactured in America and to be worn by women, and not an arbitrary or fanciful name to indicate the maker, and hence that the term

as applied to shoes was not the subject of a valid trade-mark. But the court held that complainant was entitled to be protected against unfair trade; that the record disclosed that it and its predecessors in business had employed the words "The American Girl" as a trade-mark continuously since the year 1896, had extensively advertised their shoes under that name, with the catch phrase "A shoe as good as its name," in trade journals and newspapers throughout the United States, and largely throughout the southern States, and thus established an extensive trade therefor; and that defendant by adopting in the year 1900 and thereafter using the name "The American Lady," with certain catch phrases, in connection with shoes made by it, and this with full knowledge of complainant's rights, was guilty of unfair competition, tending to and resulting in confusion in the trade, and that complainant was entitled to relief. The decree of the Circuit Court was therefore reversed, with directions to decree an injunction and an accounting limited to the time since the commencement of the suit.

Complainant petitioned this court for a writ of certiorari to review that decision, but this was denied. 214 U. S. 514.

Thereafter the Circuit Court, pursuant to the mandate of the Court of Appeals, made a decree granting an injunction in accordance with the opinion of that court, and referring to a master an accounting of the damages and profits for which defendant might be liable, "limited to shoes sold by the defendant since the filing of the bill in this case, and which were marked with the name 'American Lady,' and not accompanied with any other matter clearly indicating that such shoes were of the manufacture of the Hamilton-Brown Shoe Company." An accounting was had, extending from the date of the commencement of the suit to March 10, 1910. Complainant made no attempt to introduce substantial proof as to the amount of

its damages, declaring that they were practically incapable of exact computation. All the testimony was directed to the question of defendant's profits.

The master reported that during the period covered by the accounting defendant sold "American Lady" shoes, which, because of differences in marking, he divided into three classes:

Class 1. 974,016 pairs of shoes bearing the words "American Lady" stamped upon the sole, and bearing no other impression or distinguishing mark. The profits upon these were found to be $254,401.72.

Class 2. 961,607 pairs of shoes marked "American Lady," with the words "Hamilton-Brown Shoe Co." but without the word "Makers" or other matter indicating that the shoes were of defendant's manufacture. The profits upon these were found to be $190,909.83.

Class 3. 593,872 pairs of shoes marked "American Lady," but bearing also the marks "Hamilton-Brown Shoe Co., Makers." The profits upon these were found to be $132,740.77.

The master recommended that a judgment be entered for the profits accruing from the first two classes, aggregating $445,311.55. The profits accruing from the third class he held complainant was not entitled to recover under the opinion of the Court of Appeals and the decree of the Circuit Court entered in accordance with it. Both parties having filed exceptions, the District Court (successor of the Circuit Court), overruled those of complainant, sustained those of defendant, and adjudged a recovery of $1 nominal damages. 192 Fed. Rep. 930.

Complainant appealed to the Circuit Court of Appeals, contending that a decree should have been rendered in its favor for the profits upon the first two classes of shoes, in accordance with the master's recommendation, and that it should have included the profits upon the third class, which were denied by the master. The Court of Appeals

reversed the decree, with directions that defendant's exceptions to the master's report be overruled, that the report be confirmed, and that a decree be entered against defendant for the amount recommended by him, with costs. 206 Fed. Rep. 611.

This writ of certiorari having been allowed, we proceed to deal with the questions presented by the record.

Regarding the case as one of unfair competition without trade-mark infringement, it is insisted by petitioner that the normal recovery does not include the gains and profits of defendant, according to the rule admittedly applicable in equity to trade-mark cases, but that the injured party is limited to such damages as it shows it has sustained; and that the present case is devoid of circumstances to take it out of the ordinary rule.

If, however, complainant was and is entitled to the use of the words "The American Girl" as a trade-mark, in the strict sense of the term, and if the proofs adduced before the master, and his findings thereon, are as applicable to a claim of compensation for infringement of the trade-mark as to a claim of compensation for unfair competition in the absence of trade-mark, it will not be necessary to pass upon the question of the proper measure of recovery in a non-trade-mark case. As above pointed out, a claim of trade-mark right was asserted in the bill, and it has not been abandoned. It was overruled by the Circuit Court of Appeals on the first appeal, upon reasoning with which we are unable to concur. We do not regard the words "The American Girl," adopted and employed by complainant in connection with shoes of its manufacture, as being a geographical or descriptive term. It does not signify that the shoes are manufactured in America, or intended to be sold or used in America, nor does it indicate the quality or characteristics of the shoes. Indeed, it does not, in its primary signification, indicate shoes at all. It is a fanciful designation, arbitrarily selected by complainant's

predecessors to designate shoes of their manufacture. We are convinced that it was subject to appropriation for that purpose, and it abundantly appears to have been appropriated and used by complainant and those under whom it claims.

The cases cited to the contrary are distinguishable. In *Canal Co.* v. *Clark,* 13 Wall. 311, 324, the word "Lackawanna" was rejected as a trade-mark for coal because it designated the district in which the coal was produced. In *Columbia Mill Co.* v. *Alcorn,* 150 U. S. 460, 466, it was held that "Columbia" could not be appropriated for exclusive use as a trade-mark because it was a geographical name. So, with respect to "Elgin," as designating watches, *Elgin Natl. Watch Co.* v. *Illinois Watch Co.,* 179 U. S. 665, 673; "Genesee," claimed as a trade-mark for salt, *Genesee Salt Co.* v. *Burnap,* 73 Fed. Rep. 818; "Old Country," as a mark for soap, *Allen Wrisley Co.* v. *Iowa Soap Co.,* 122 Fed. Rep. 796. If the mark here in controversy were "American Shoes," these cases would be quite in point. (And see *Shaver* v. *Heller & Merz Co* , 108 Fed. Rep. 821, 826.) But "The American Girl" would be as descriptive of almost any article of manufacture as of shoes; that is to say, not descriptive at all. The phrase is quite analogous to "American Express," held to be properly the subject of exclusive appropriation as a trade-mark for sealing wax in *Dennison Mfg. Co.* v. *Thomas Mfg. Co.,* 94 Fed. Rep. 651, 653.

It is contended that this question is settled otherwise, at least as between these parties, by the decision of the Circuit Court of Appeals on the first appeal and our refusal to review that decision upon complainant's petition for a writ of certiorari, and that the only questions open for review at this time are those that were before the Court of Appeals upon the second appeal. This, however, is based upon an erroneous view of the nature of our jurisdiction to review the judgments and decrees of the Circuit Court of

Appeals by certiorari under § 240, Jud. Code, derived from § 6 of the Evarts Act of March 3, 1891, 26 Stat. 826, 828, ch. 517. As has been many times declared, this is a jurisdiction to be exercised sparingly, and only in cases of peculiar gravity and general importance, or in order to secure uniformity of decision. *Lau Ow Bew, Petitioner,* 141 U. S. 583, 587; *In re Woods,* 143 U. S. 202; *Lau Ow Bew* v. *United States,* 144 U. S. 47, 58; *Amer. Const. Co.* v. *Jacksonville Ry.,* 148 U. S. 372, 383; *Forsyth* v. *Hammond,* 166 U. S. 506, 514; *Fields* v. *United States,* 205 U. S. 292, 296. And, except in extraordinary cases, the writ is not issued until final decree. *Amer. Const. Co.* v. *Jacksonville Railway,* 148 U. S. 372, 378, 384; *The Three Friends,* 166 U. S. 1, 49; *The Conqueror,* 166 U. S. 110, 113; *Denver* v. *N. Y. Trust Co.,* 229 U. S. 123, 133. The decree that was sought to be reviewed by certiorari at complainant's instance was not a final one, a fact that of itself alone furnished sufficient ground for the denial of the application; besides which it appears, by reference to our files, that the application was opposed by the present petitioner upon the ground that the case, however important to the parties, involved no question of public interest and general importance, nor any conflict between the decisions of state and Federal courts, or between those of Federal courts of different circuits.

It is, of course, sufficiently evident that the refusal of an application for this extraordinary writ is in no case equivalent to an affirmance of the decree that is sought to be reviewed. And, although in this instance the interlocutory decision may have been treated as settling "the law of the case" so as to furnish the rule for the guidance of the referee, the District Court, and the Court of Appeals itself upon the second appeal, this court, in now reviewing the final decree by virtue of the writ of certiorari, is called upon to notice and rectify any error that may have occurred in the interlocutory proceedings. *Panama Railroad*

v. *Napier Shipping Co.*, 166 U. S. 280, 284; *United States* v. *Denver & R. G. R. R.*, 191 U. S. 84, 93; *Lutcher & Moore* v. *Knight*, 217 U. S. 257, 267; *Messenger* v. *Anderson*, 225 U. S. 436, 444.

Having reached the conclusion that complainant is entitled to the use of the words "The American Girl" as a trade-mark, it results that it is entitled to the profits acquired by defendant from the manifestly infringing sales under the label "American Lady," at least to the extent that such profits are awarded in the decree under review. The right to use a trade-mark is recognized as a kind of property, of which the owner is entitled to the exclusive enjoyment to the extent that it has been actually used. *McLean* v. *Fleming*, 96 U. S. 245, 252; *Manhattan Medicine Co.* v. *Wood*, 108 U. S. 218, 224. The infringer is required in equity to account for and yield up his gains to the true owner, upon a principle analogous to that which charges a trustee with the profits acquired by wrongful use of the property of the *cestui que trust.* Not that equity assumes jurisdiction upon the ground that a trust exists. As pointed out in *Root* v. *Railway*, 105 U. S. 189, 214, and *Tilghman* v. *Proctor*, 125 U. S. 136, 148 (patent cases), the jurisdiction must be rested upon some other equitable ground—in ordinary cases, as in the present, the right to an injunction—but the court of equity, having acquired jurisdiction upon such a ground, retains it for the purpose of administering complete relief, rather than send the injured party to a court of law for his damages. And profits are then allowed as an equitable measure of compensation, on the theory of a trust *ex maleficio.* In the courts of England, the rule seems to be that a party aggrieved must elect between damages and profits, and cannot have both. In this country, it is generally held that in a proper case both damages and profits may be awarded. As already observed, the decree under review allows profits only, confines the allowance to such as ac-

crued after the commencement of the suit, and excludes all sales where the term "American Lady" was accompanied with any other matter clearly indicating that such shoes were of the manufacture of the Hamilton-Brown Shoe Company. It was construed to exclude all shoes bearing in addition to "American Lady" the marks "Hamilton-Brown Shoe Co., Makers." The account was based upon undisputed data, and no reason is suggested why, if otherwise accurate, it is not as properly applicable upon the theory of trade-mark as upon that of unfair competition aside from trade-mark infringement—at least, so far as defendant is entitled to criticise it; complainant is not attacking the decree.

It is, however, insisted by defendant (petitioner) that whether the recovery be based upon the theory of trade-mark, or upon that of unfair competition, the profits recoverable should be limited to such amount as may be shown by direct and positive evidence to be the increment to defendant's income by reason of the infringement, and that the burden of proof is upon complainant to show what part of defendant's profits were attributable to the use of the infringing mark. It is said the true rule is strictly analogous to that applied in patent cases, and *Mowry* v. *Whitney,* 14 Wall. 620, 650; *Elizabeth* v. *Pavement Co.,* 97 U. S. 126, 139; *Garretson* v. *Clark,* 111 U. S. 120, 121; *Dobson* v. *Hartford Carpet Co.,* 114 U. S. 439, 444; *Tilghman* v. *Proctor,* 125 U. S. 136, 146; *Keystone Mfg. Co.* v. *Adams,* 151 U. S. 139, 147; *Westinghouse Co.* v. *Wagner Mfg. Co.,* 225 U. S. 604, 615; and *Dowagiac Mfg. Co.* v. *Minnesota Plow Co.,* 235 U. S. 641, are relied upon. The rule invoked is that which, as pointed out in the last two of these cases, is applicable where plaintiff's patent relates to a part only of a machine or combination or process, or to particular improvements in a machine or other device. In such case, where the invention is used in combination with other elements of value not covered by the patent,

so that plaintiff's patent creates only a part of the profits, he is entitled to recover only that part, and must give evidence tending to apportion the profits between the patented and unpatented features. But, as pointed out in the *Westinghouse Case* (p. 618), there is a recognized exception where the plaintiff carries the burden of proof to the extent of showing the entire profits, but is unable to apportion them, either because of the action of the wrongdoer in confusing his own gains with those which belong to plaintiff, or because of the inherent impossibility of making an approximate apportionment. There, "on established principles of equity, and on the plainest principles of justice, the guilty trustee cannot take advantage of his own wrong."

Assuming the asserted analogy to patent cases to exist, a sufficient reason for not requiring complainant in the present case to make an apportionment between the profits attributable to defendant's use of the offending mark and those attributable to the intrinsic merit of defendant's shoes is that such an apportionment is inherently impossible. Certainly, no formula is suggested by which it could be accomplished. The result of acceding to defendant's contention, therefore, would be to deny all compensation to complainant. And it is to be remembered that defendant does not stand as an innocent infringer. Not only do the findings of the Court of Appeals, supported by abundant evidence, show that the imitation of complainant's mark was fraudulent, but the profits included in the decree are confined to such as accrued to defendant through its persistence in the unlawful simulation. in the face of the very plain notice of complainant's rights that is contained in its bill. As was said by the Supreme Court of California in a similar case, *Graham* v. *Plate*, 40 California, 593, 598; 6 Am. Rep. 639, 640: "In sales made under a simulated trade-mark it is impossible to decide how much of the profit resulted from the intrinsic value of

the commodity in the market, and how much from the credit given to it by the trade-mark. In the very nature of the case it would be impossible to ascertain to what extent he could have effected sales and at what prices except for the use of the trade-mark. No one will deny that on every principle of reason and justice the owner of the trade-mark is entitled to so much of the profit as resulted from the use of the trade-mark. The difficulty lies in ascertaining what proportion of the profit is due to the trade-mark, and what to the intrinsic value of the commodity; and as this cannot be ascertained with any reasonable certainty, it is more consonant with reason and justice that the owner of the trade-mark should have the whole profit than that he should be deprived of any part of it by the fraudulent act of the defendant. It is the same principle which is applicable to a confusion of goods. If one wrongfully mixes his own goods with those of another, so that they cannot be distinguished and separated, he shall lose the whole, for the reason that the fault is his; and it is but just that he should suffer the loss rather than an innocent party, who in no degree contributed to the wrong." To the same effect are *Avery* v. *Meikle*, 85 Kentucky, 435, 448; 7 Am. St. Rep. 604, 610; *El Modello Cigar Co.* v. *Gato*, 25 Florida, 886, 915; 23 Am. St. Rep. 537, 544; 6 L. R. A. 823, 829; *Regis* v. *Jaynes*, 191 Massachusetts, 245, 249, 251; *Shoe Co.* v. *Shoe Co.*, 100 Maine, 461, 479; *Saxlehner* v. *Eisner & Mendelson Co.*, 138 Fed. Rep. 22, 24.

Finally, it is contended that the account as stated by the master and confirmed by the Circuit Court of Appeals failed to make due allowance for certain items entering into the cost of manufacturing and selling the shoes in diminution of defendant's profits, including interest on capital, depreciation of real estate, taxes, insurance, advertising, and trade discounts. These are matters of fact, respecting which we see no sufficient reason for disturbing the decree. One of the points

most earnestly insisted upon is that certain overhead charges, appearing on defendant's books as "Advance Boston House, $73,772.03" and "Allowance to Boston, $103,075.14," of which the amount chargeable *pro rata* against "American Lady" shoes not marked "Makers," for the period covered by the accounting, was $10,271.69, ought to have deen deducted in computing defendant's profits. The only explanation of these charges is in a stipulation of the parties that they "represent allowances made by the wholesale house of Hamilton-Brown Shoe Company on goods shipped by it to what is known as the 'Boston House,' being a separate and distinct corporation from the defendant company, and the amount received by the Hamilton-Brown Shoe Company from the 'Boston House' for goods shipped to it was $73,772.03 and $103,075.14 less than the price at which the goods were billed to that house, and those items do not represent moneys paid by the Hamilton-Brown Shoe Company to the 'Boston House' or advances by the Hamilton-Brown Shoe Company to the 'Boston House.'" If, in the Master's calculation of the profits, defendant had been charged with sales of the goods at the prices at which they were billed to the Boston House, the insistence that a deduction of $10,271.69 ought to be allowed as being in the nature of a trade discount would seem correct. But that is not made to appear, and we cannot conclude that the Master erred in overruling this allowance.

*Decree affirmed.*

THE CHIEF JUSTICE and MR. JUSTICE VAN DEVANTER are of opinion that the term "The American Girl," as applied to women's shoes made and sold in America, is geographical and descriptive and not subject to exclusive appropriation as a trade-mark, and that upon this record a recovery of the entire profits is not admissible. They therefore dissent.