**MISSOURI, K. & T. RY. CO. v. JACKSON et al.**

**JACKSON et al. v. MISSOURI, K. & T. RY. CO.**

**Nos. 3714–3718.**

United States Court of Appeals
Tenth Circuit.

April 7, 1949.

John E. M. Taylor, of Oklahoma City, Okl. (Guy L. Andrews, of McAlester, Okl., and Richard Martin, of Muskogee, Okl., on the brief), for appellant and cross-appellee.

Truman B. Rucker, of Oklahoma City, Okl., and Bryan W. Tabor, of Tulsa, Okl. (Kirksey Nix, of McAlester, Okl., on the brief), for appellees and cross-appellants.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

W. C. Jackson and Pauline Jackson, husband and wife, owned a tract of land and certain improvements thereon, including their residence and a storage warehouse approximately thirty-six feet wide and one hundred feet long. The property was located immediately west of the railroad right-of-way of the Missouri-Kansas-Texas Railway Company at a point about a mile north of McAlester, Oklahoma. The warehouse was leased to Sunflower Laboratories, Inc., a corporation engaged in the manufacture and sale of soap; and certain merchandise, machinery, and other property were stored in it. W. C. Jackson and Pauline Jackson and their son owned all of the stock issued by the corporation, and W. C. Jackson managed its business. Certain companies issued policies of insurance insuring the building and its contents against destruction by fire. The building, virtually all of its contents, and some lumber near the building, were destroyed by fire; and the insurance companies made certain payments under their policies. W. C. Jackson, Pauline Jackson, and Sunflower Laboratories, Inc., for themselves, and Sunflower Laboratories, Inc., as trustee for the use and benefit of the insurance companies, instituted this suit against Missouri-Kansas-Texas Railway Company for damages. The claim pleaded was that through negligence of the railway company fire escaping from one of its engines set fire to dry grass and other combustible materials which had accumulated and remained on the right-of-way; that the fire spread and was communicated to the premises of plaintiffs; that the building and its contents were destroyed; that the trees, shrubbery, and landscaping of the premises were damaged; and that certain expenses were incurred in removing debris and salvage from the premises and in repairing the foundation in order to begin construction of another building. By answer, the railway company admitted that the building was burned; denied that the company caused the fire; and pleaded contributory negligence. The jury returned a verdict for plaintiffs; the court entered judgment on the verdict, less a small amount which was remitted; and the parties plaintiff and defendant perfected separate appeals.

Taking up the appeal of the railway company, it is contended that the court erred in refusing to direct a verdict in its favor for the reason that the evidence failed to show that the fire which burned the building and its contents was caused by an engine belonging to the company. While under the law of Oklahoma it was not necessary for plaintiffs to prove negligence on the part of the railway company, it was incumbent upon them to show affirmatively that the fire which destroyed the property involved in the suit originated from a passing locomotive belonging to the company; but in a case of this kind the origin of the fire may be established by circumstantial evidence. Kansas City Southern Railway Co. v. Henderson, 54 Okl. 320, 153 P. 872; St. Louis & San Francisco Railroad Co. v. Mobley, 70 Okl. 297, 174 P. 510; Midland Valley Railroad Co. v. Rupe, 87 Okl. 286, 210 P. 1038.

The evidence presented some sharp conflicts, but substantial testimony was introduced which tended to establish these facts. Two trains going south passed the warehouse and other property between seven and eight o'clock in the morning. The first was a passenger train and the second was a freight train. Each was drawn by

an oil burning engine. Sand used to clean the flues of an oil burning engine sometimes comes out of the stack and the fire box in the form of red hot carbon, soot, and black sand; and sometimes it comes out in balls about the size of the end of one's thumb, and they disintegrate and break up when touched or kicked. The fire sometimes comes up near the cab. Engines often operated in that manner when passing along the track opposite the warehouse and other property involved in this action, and the engine of the freight train which passed on the morning of the fire shot out some fire. There was high, dry grass along the right-of-way, some of which was within a foot of the end of the ties. No fire was burning in the vicinity prior to the time the trains passed. Immediately after the freight train passed, the grass on the right-of-way four or five feet west of the track was burning. The fire was about the distance of four or five city blocks south of the warehouse. A wind was blowing from the south. The fire spread quickly to a pasture adjoining the right-of-way on the west, and then went north toward the warehouse. The evidence and the inferences fairly to be drawn from it presented an issue of fact for the jury as to whether the fire was set out by the passing locomotive. Midland Valley Railroad Co. v. Barton, 191 Okl. 359, 129 P.2d 1007.

The next contention is that the court erred in submitting the case to the jury for the reason that the evidence was insufficient to show that the fire which destroyed the property of plaintiffs was the same fire or a continuation thereof which originated on the right-of-way. The fire was discovered on the right-of-way about eight o'clock in the morning, immediately after the passing of the freight train. A section foreman and three members of his crew went to the scene and undertook to extinguish the fire. An employee of the owner of the pasture in which the grass was burning arrived and joined in the effort. Believing that they had extinguished the fire, the men left the scene about ten-thirty o'clock. About noon the fire was burning again. It started immediately on the line where the men thought they had extinguished it. Fanned by the wind from the south, the fire moved northward and was communicated to the property of plaintiffs. The burned area from the point on the right-of-way at which the fire originated to the property of plaintiffs was continuous. The evidence considered in its totality presented an issue of fact as to whether the fire which destroyed the property of plaintiffs was the same fire or a continuation of it which started on the right-of-way, and therefore the court did not err in submitting the question to the jury.

[4, 5] Complaint is made that the damages sustained as the result of the destruction of the warehouse were not proved by competent evidence. The construction of the warehouse was completed shortly before the fire, and for all practical purposes it was a new building. Plaintiff W. C. Jackson purchased the materials and with his employees constructed the building. He testified concerning the cost of the building, and in fixing the cost only the amounts actually expended were included. The building was located beyond the city limits and perhaps did not have any fixed market value except as a warehouse for use in connection with the established business of manufacturing and selling soap. Under the law of Oklahoma, the measure of damages for the loss of a building destroyed by fire is the actual cash value of the building at the time and place of its destruction, and that value may be established by evidence of original cost and the cost of replacement, making allowance for deterioration and other like factors bearing upon its condition. Chicago, Rock Island & Pacific Railway Co. v. Galvin, 59 Okl. 258, 158 P. 1153, L.R.A.1917A, 365. Inasmuch as the building was for all practical purposes new, the evidence relating to its cost was competent and sufficient to establish the measure of damages for its destruction.

The further insistence is that there was a lack of competent proof concerning the quantity and value of the merchandise in the warehouse at the time of the fire. Plaintiff Sunflower Laboratories, Inc., did not keep a complete set of records in connection with its business of manufacturing and selling soap. Invoices, a check book, and inventories constituted the principal records. There was no stock

book, no day book, no cash book, and no ledger. Plaintiff W. C. Jackson took an inventory of the merchandise in the building on October 1, 1946, and the fire occurred on October 13. To the inventory was added the amount shown by invoices representing materials received between the first and the thirteenth of October, and amounts which Jackson testified represented materials withdrawn during that period were subtracted. He testified that he had personal knowledge of the withdrawals and did not depend upon records for his knowledge. The records were not introduced. Section 501, Title 12 Oklahoma Statutes 1941, provides in substance that upon an affirmative showing of their authenticity and correctness, entries in books of account may be admitted in evidence. But the statute does not provide the exclusive method of proving the facts shown by books of accounts. Testimony of a witness having personal knowledge of the facts is competent for that purpose. Howerton v. Joplin Supply Co., 105 Okl. 171, 232 P. 104.

■ The action of the court in refusing to give to the jury ten requested instructions is challenged. There is no need to discuss separately the several instructions. The case was one for the jury. The instructions of the court fairly, substantially, and adequately covered the material issues in the case. And even though requested instructions are correct statements of law, the court is not required to give them if the subject matter has been appropriately covered in the instructions already given. Metropolitan Life Insurance Co. v. Banion, 10 Cir., 106 F.2d 561; Mid-Continent Pipe Line Co. v. Whiteley, 10 Cir., 116 F.2d 871; Brigham Young University v. Lillywhite, 10 Cir., 118 F.2d 836, 137 A.L.R. 598.

■ The railway company interposed a motion for new trial. It was denied, and that action is presented for review. But a motion for new trial is addressed to the sound judicial discretion of the trial court and its ruling thereon will not be disturbed on appeal except for a clear abuse of such discretion. Viles v. Prudential Insurance Company of America, 10 Cir., 107 F.2d 696, certiorari denied 308 U.S. 626, 60 S.Ct. 387, 84 L.Ed. 523; Dyess v. W. W. Clyde & Co., 10 Cir., 132 F.2d 972. The denial of the motion for new trial did not constitute an abuse of discretion.

■ Turning to the appeal of plaintiffs, following the return of the verdict plaintiffs filed a motion requesting the court to enter judgment in their favor for double damages; and error is predicated upon the action of the court in denying the motion. The motion was predicated upon Chapter 15, Article 1, Section 4, Session Laws of Oklahoma 1936–1937, now Title 50, Section 19, Oklahoma Statutes 1941. The statute was enacted as part of a penal code relating to forest fires. Section 1 of the act 21 O.S. 1941 § 1395, provides that certain acts shall constitute a misdemeanor and fixes the penalty therefor. Section 2, 21 O.S. 1941 § 1396, provides that certain acts shall constitute a felony and provides the punishment therefor. Section 3, 50 O.S.1941 § 18, declares that certain acts shall constitute a public nuisance and authorizes its abatement. Section 4, 50 O.S. 1941 § 19, provides that a person, firm, or corporation starting or being responsible for a fire that occasions damage to another person shall make satisfaction in double damages to the party injured, to be recovered by civil action. Section 5, 21 O.S.1941 § 1397, provides that the fines collected in the enforcement of the act shall be covered into the school funds. Section 6, 21 O.S.1941 § 1398, vests in the representatives of the Oklahoma Forest Commission certain powers and duties in extinguishing fires and enforcing the fire laws of the state. Section 7, 21 O.S.1941 § 1399, relates to criminal prosecutions for violations of the act. Section 8, 21 O.S.1941 § 1400, gives to the State the same privilege of change of venue as is granted to the defendant in the enforcement of the act. Section 9 repeals certain statutes. And Section 10 provides that the provisions of the act shall be severable in respect to their constitutional validity. All parts of the act must be taken into consideration in determining the question whether Section 4 thereof has application to a case of this kind. Considered as a whole, it is fairly clear that the section was intended to apply to fires intentionally started, or to fires allowed to spread wilfully, maliciously, or in wanton diregard of the rights of others.

■ It is provided by Title 2, Section 748, Oklahoma Statutes 1941, that a railroad company operating a line of railroad in the state shall be liable for all damages sustained by fire originating from the operation of its road. That is a special statute relating solely and exclusively to damages sustained by fire originating from the operation of a line of railroad. That statute was in effect at the time of the enactment of Section 4, supra. But the later statute is general in its terms and does not expressly repeal the earlier special statute. And in Oklahoma, as elsewhere, it is a canon of statutory construction that where there are two statutes upon the same subject, the earlier being special and the later general, the special remains in effect as an exception to the general unless absolute incompatibility exists between the two, and all matters coming within the scope of the special statute are governed by its provisions. Crosbie v. Partridge, 85 Okl. 186, 205 P. 758; Hollis v. Adams Gin Co., 115 Okl. 25, 241 P. 744. Viewed in the light of this recognized canon of statutory construction, we think that the special statute governs in a case of this kind and that plaintiffs were not entitled to double damages.

The judgment is affirmed.