The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a corporation, Appellant,

v.

Jessie W. JACKSON, Appellee.

No. 5220.

United States Court of Appeals Tenth Circuit.

June 27, 1956.

Rehearing Denied Aug. 3, 1956.

Murrah, Circuit Judge, dissented.

W. E. Treadway, Topeka, Kan. (Lawrence Weigand, Wichita, Kan., C. J. Putt, Topeka, Kan., J. B. Reeves, Oklahoma City, Okl., and Edwin M. Wheeler, Topeka, Kan., on the brief), for appellant.

Louis N. Crill, Minneapolis, Minn. (Ratner, Mattox & Ratner, Wichita, Kan., Davis, Rerat, Yaeger & Lush, and Bonner & Clements, Minneapolis, Minn., on the brief), for appellee.

Before BRATTON, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

BRATTON, Chief Judge.

This was an action instituted in the United States Court for Kansas by Jessie W. Jackson against The Atchison, Topeka and Santa Fe Railway Company. The action was brought under the Federal Employers' Liability Act, as amend-

ed, 45 U.S.C.A. § 51 et seq., to recover damages for personal injury. It was alleged in the complaint that plaintiff was the conductor on a certain freight train owned and operated by the defendant; that while the train was moving plaintiff prepared to board the caboose in the usual and customary manner; that due to the defective and insecure sill steps on the caboose and to the insecurity of the handholds located on the caboose, plaintiff was unable to obtain secure footing on the step and was caused to fall onto the track and roadbed adjacent to the caboose; and that he suffered serious and permanent injury. By answer, the defendant denied that the steps of the caboose were defective; denied that plaintiff suffered injury by reason of any defect attributable to the caboose; and pleaded that negligence on the part of plaintiff in mounting or attempting to mount the steps on the caboose of a moving train proximately caused or contributed to any injury which he may have sustained. The jury returned a verdict for plaintiff; judgment was entered upon the verdict; and the defendant appealed.

The first question to which the parties address themselves is whether the action of the trial court in permitting the law firm of Davis, Rerat, Yaeger & Lush, of Minneapolis, Minnesota, hereinafter referred to as the Minneapolis firm, to appear as counsel for plaintiff and participate in the trial of the case is open to review. A formal order of a court granting or denying a petition for admission to practice law is a judgment in a judicial proceeding subject to review on appeal in like manner to that provided by law for review of a judgment in an ordinary civil action. In re Summers, 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795. And the action of the court in permitting the Minneapolis firm to appear as counsel and participate in the trial of the case constituted judicial action in the nature of an interlocutory order in this particular case. Courts of appeals are courts of limited jurisdiction; and save for excepted instances in which it is oth-erwise provided by statute, they have jurisdiction to review only final decisions of the district courts. Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478; State Tax Commission of Utah v. United States, 10 Cir., 136 F.2d 903; Breeding Motor Freight Lines v. Reconstruction Finance Corp., 10 Cir., 172 F.2d 416, certiorari denied, 338 U.S. 814, 70 S.Ct. 54, 94 L.Ed. 493; Kanatser v. Chrysler Corp., 10 Cir., 195 F.2d 104; Long v. Union Pacific Railroad Co., 10 Cir., 206 F.2d 829.

By 28 U.S.C.A. § 1292, courts of appeal are expressly vested with jurisdiction to entertain direct appeals from certain kinds of interlocutory orders. The order permitting the Minneapolis firm to participate in the trial of the case does not fall within the purview of that statute. And such order could not have been brought to this court for review by direct appeal. Croissant v. Adams, 7 Cir., 27 F.2d 48. But for purposes of appeal, an interlocutory action from which no direct appeal will lie becomes merged into the final judgment and is open to review on appeal from the final judgment. Hamilton-Brown Shoe Co. v. Wolf Brothers & Co., 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629; Satterlee v. Harris, 10 Cir., 60 F.2d 490; Victor Talking Machine Co. v. George, 3 Cir., 105 F.2d 697, certiorari denied, 308 U.S. 611, 60 S.Ct. 176, 84 L.Ed. 511. By appropriate application of that well recognized general rule, we think it is clear that the interlocutory action permitting the Minneapolis firm to participate in the trial of the cause is open to review on this appeal from the final judgment.

Coming to the question whether the action of the court in permitting the Minneapolis firm to appear as counsel and participate in the trial constituted prejudicial error which requires reversal of the judgment, the defendant objected at the pretrial conference to such firm appearing and participating in the trial. The basis of the objection was asserted unethical and unprofessional conduct. Following the pretrial conference, an order was entered setting the matter for

hearing with both judges of the court participating. When the matter came on for hearing, both judges did participate and a committee of the State Bar Association of Kansas attended. A member of the Bar of Wichita, Kansas, appeared as counsel for plaintiff but no member or associate of the Minneapolis firm appeared. Evidence and affidavits were submitted which tended to establish these facts and circumstances. No member or associate of the Minneapolis firm was admitted to practice before the courts in Kansas or before the United State Court for the District of Kansas. Pat Meroney, of Kansas City, Missouri, was a member of an organization frequently called the Brotherhood of Railroad Trainmen. On several occasions, Meroney sought out and interviewed persons known to have claims against the defendant for damages for death or personal injuries and solicited them to employ the Minneapolis firm. He carried with him printed agreements designed and intended for use in employing such firm. And as an inducement, he explained to the prospective client that the firm would defray all expenses of the litigation and would make advances of cash for the support and maintenance of the client until the claim was settled or the litigation ended. In some instances employment of the Minneapolis firm was effectuated through such pattern of conduct. And in some instances payments were made by the firm to the client during the period of employment. Speaking in general terms, the checks of the firm were issued monthly and ranged in amount from $150 to $350 each. One was for $800. One client was paid the total sum of $6,850 and another the total amount of $3,350. We entertain no doubt that the Minneapolis firm had knowledge of the methods and means which Meroney employed in soliciting and securing employment of the firm, and we are of the considered view that obtaining professional employment in that manner and making cash advancements of large sums to clients during the period of the employment amounted to aggravated violation of well recognized ethical and professional standards of long duration and virtually universal observance. And we do not stop to search statutes, rules, or canons in support of the power of a court to withhold from attorneys obtaining and carrying out professional employment in such manner the privilege under the rule of comity to appear as counsel and participate in the trial of a case. A court has the inherent power to protect and further the untrammeled administration of justice by withholding from attorneys who obtain employment in that manner the privilege under the rule of comity of appearing as counsel and participating in the trial of a case.

But the question whether the privilege under the rule of comity to appear as counsel and participate in the trial of the case should be extended to or withheld from the Minneapolis firm was addressed to the sound judicial discretion of the trial court. The term discretion when used as a guide to judicial action means sound discretion exercised with due regard for that which is right and equitable under the circumstances. It means discretion directed by reason and conscience to a just result, and it frequently involves painstaking consideration of many factors, giving to each the weight to which it is appropriately entitled. Smaldone v. United States, 10 Cir., 211 F.2d 161. Viewed in that manner, we find ourselves unable to say that the action of the trial court in permitting the Minneapolis firm to participate in the trial of the case constituted an abuse of sound judicial discretion which requires reversal of the judgment.

It is urged that the court erred in admitting in evidence the testimony of the witness McDivitt, given in rebuttal. The witness testified that he was a car inspector for the Frisco Railway Company for twenty years; that at the time of the trial he had been retired for twelve years; that in order to qualify as a car inspector it was necessary to take periodic tests given by the Interstate Commerce Commission; that the duties of a car inspector included the in-

spection of sill steps on cabooses; that a sill step on a caboose was supposed to be rigid; and that no play horizontally of such a step was to be allowed. One ground of objection was the lack of qualification of the witness as an expert. But the question whether a witness is qualified to give expert testimony is a matter resting largely in the discretion of the trial court, and its ruling thereon will not be disturbed on appeal unless there was clear error. Korth v. Zion's Savings Bank & Trust Co., 10 Cir., 148 F.2d 170; Chapman v. United States, 10 Cir., 169 F.2d 641, certiorari denied, 335 U.S. 860, 69 S.Ct. 134, 93 L.Ed. 406. We fail to perceive error in the determination of the trial court that the witness was qualified to testify as an expert. The other ground of objection was that the printed rules of the Interstate Commerce Commission were the best evidence. The best-evidence rule is not always an inflexible and unyielding one. A reasonable discretion is vested in the trial court in the application of the rule. Ostrowski v. Mockridge, 242 Minn. 265, 65 N.W.2d 185. The admission of the testimony of the expert witness did not constitute prejudicial error.

 Finally, it is argued that the motion for new trial should have been granted. But it is an inveterate rule of frequent repetition that a motion for new trial is addressed to the sound judicial discretion of the trial court and that the ruling thereon will not be disturbed on appeal except for a clear abuse of such discretion. Missouri, Kansas & Texas Railway Co. v. Jackson, 10 Cir., 174 F.2d 297; American Smelting & Refining Co. v. Sutyak, 10 Cir., 175 F.2d 123; Trapp v. United States, 10 Cir., 177 F.2d 1, certiorari denied, 339 U.S. 913, 70 S.Ct. 573, 94 L.Ed. 1339; Kansas City Public Service Co. v. Shephard, 10 Cir., 184 F.2d 945; Thiringer v. Barlow, 10 Cir., 205 F.2d 476. The denial of the motion for new trial did not constitute a clear abuse of discretion.

The judgment is affirmed.

MURRAH, Circuit Judge (dissenting).

In the "considered view" of the majority, the attorneys who procured the assailed judgment stand guilty of aggravated violations of "well recognized ethical and professional standards of long duration and virtually universal observance." And, the trial court in the first instance, and this court on appeal, has the inherent power to deny the attorneys guilty of such misconduct access to the bar of the court.

To be sure, whether in a given case, an attorney at law is guilty of such misconduct as to warrant denial of the privilege to practice before the bar of the court, is addressed to the sound discretion of the trial court in the first instance. And, that discretion certainly ought not be disturbed on appeal in the absence of clear abuse. But the discretion thus committed to the trial court is a judicial discretion, subject to review in accordance with the accepted canons of appellate practice. And, where public policy of such far-reaching importance is at stake, this court has the inescapable duty to speak positively and unequivocally for the guidance of the courts and the profession.

These considerations compel me to express the view that the facts conclusively shown by this record require this court in the exercise of its appellate jurisdiction to deny the nonresident attorneys who participated in the trial of this case access to the bar of the federal courts. An attorney who is guilty of an aggravated violation of recognized professional standards has no standing before the bar, and is not entitled to invoke the discretion of the court whether comity will be extended. In short, the uncontroverted facts leave no room for the exercise of a discretion. And see Judy v. Atchison, T. & S. F. Ry. Co., 111 Kan. 46, 205 P. 1116.

Since, in my view, the attorneys were not entitled to the courtesy of the bar, the trial conducted by such ineligible practitioners was a nullity in all respects.

See Bennie v. Triangle Ranch Co., 73 Colo. 586, 216 P. 718; Crawford v. McConnell, 173 Okl. 520, 49 P.2d 551; 7 C.J.S., Attorney and Client, § 16b, p. 725. Certainly the attorneys should not be allowed to reap the fruits of a judgment thus procured. I would accordingly reverse the judgment for a new trial.