INSURANCE COMMISSIONERS PROTEST FUND Section 3 of Senate Bill 351 of the 1971 Legislature is general in its terms and does not expressly repeal the different rules and procedures contained in the earlier specific statute, 62 O.S. 206 [62-206] (1961). The provisions of 62 O.S. 206 [62-206] (1961) are to be controlling where proper protests are entered to the payment of the annual premium taxes provided for in Senate Bill 351 of the 1971 Legislature. The pre-payments of annual premium taxes received by the State Insurance Commissioner are to be placed in a special trust fund in the State Treasury known as the State Insurance Commissioner's "protest fund" in the event proper protests are received from the taxpayers at the same time that the taxes are paid. From and after the time of the receipt of these taxes, they are to be considered as being constructively held by the general fund of the State, subject only to being paid as reimbursement to the taxpayers or being allocated as otherwise provided for by law. The Attorney General has considered your request for a formal opin- ion contained in your letter dated June 24, 1971. In your letter you refer to Senate Bill 351 of the 1971 Legislature which was passed by the Senate and the House of Representatives on June 3, 1971, and signed into law by the Governor on June 4, 1971. In regard to Senate Bill 351 you ask: "Whether the measure requires the obligated insurance companies to pay 1/2 of their estimated premium tax for the year 1971 on or before June 25, and the balance or remaining 1/2 thereof on or before December 15, 1971." In answer to this question, this office issued its Opinion No. 71-304 on June 28, 1971, in which it was held: "Based upon the foregoing reasoning and authorities, it is the opinion of the Attorney General that the meaning of the language of Section 1 of Senate Bill 351 of the 1971 Legislature, is that one half of the total estimated annual premium tax to be paid by insurers in the year 1971 is to be prepaid on or before June 25, 1971, and that one-half of the total estimated annual premium tax to be paid by the insurers in the year 1971 is to be paid on or before December 15, 1971." A copy of Opinion No. 71-304 is enclosed for your benefit. Also in regard to Senate Bill 351, you ask the following question: "Shall any monies paid `under protest' but in accordance with the terms of the enclosed measure be immediately deposited to the credit of the State's General Fund or shall they be held in a special account pending a determination of such protest." The following is a discussion of the statutory and case authorities dealing with your question. Revenues received by the State Insurance Commissioner are routinely handled in accordance with the provisions of 62 O.S. 7.1 [62-7.1] (1961). Withdrawals from the depository account provided for in the foregoing statute are handled in accordance with the provisions of 62 O.S. 7.4 [62-7.4] (1961). Where the payment of allegedly invalid fees or taxes is made under protest, the provisions of 62 O.S. 206 [62-206] (1961) govern. It reads as follows: "In all cases where it is alleged or claimed that fees or taxes are in whole or in part unconstitutional or otherwise invalid, the aggrieved person shall pay the full amount therefor to the proper collecting officer and at the same time give notice in writing to said officer stating the grounds of his complaint and that suit will be brought against him for the recovery of all or a specified part of said fees or taxes. It shall be the duty of said officer to deposit said fees or taxes to his credit in a special trust fund in his depository account in the State Treasury to be known as his `Protest Fund' and to retain the same therein for a period of sixty (60) days, and if within such time summons shall be served upon him in a suit for the recovery of said fees or taxes or a specified part thereof he shall further so retain the fees or taxes sued for until the final determination of the suit, but if no such suit is so filed he shall thereon transfer said fees or taxes by voucher, as provided in 62 O.S. 78 [62-78] (1941), into the fund or funds in the State Treasury to which same belongs. Said suits shall be brought in State courts having jurisdiction thereof and shall be given precedence therein. If upon final determination of any such suit the Court shall find that the fees or taxes sued for, or any part thereof, were illegally collected it shall render judgment in favor of the plaintiff therefor, and shall order said collecting officer, or his successor, to pay the amount of said judgment by voucher, as provided in said Section 78, from his said Protest Fund to the plaintiff. Said officer shall thereon transfer, as aforesaid, the balance of said fees or taxes, if any, into the fund or funds in the State Treasury to which same belongs. Provided that the provisions of this Section shall not apply to ad valorem taxes, taxes on intangible personal property, taxes collected by the Oklahoma Tax Commission, or to taxes collected by the Oklahoma Employment Security Commission." Title 62 O.S. 78 [62-78] (1941), referred to above, was repealed by Laws 1947, p. 366, 8. These subjects are now covered by 62 O.S. 1961 7.1 [62-7.1] and 7.4. Section 3 of Senate Bill No. 351 makes provision for the handling of the revenues obtained from the premium tax as follows: "Said premium tax as collected shall be deposited by the thirtieth day of the month of receipt to the credit of the general fund subject only to the allocations thereof as otherwise provided by law." The issue boils down to one of whether the State Insurance Commissioner is to deposit the premium taxes paid under protest into a "protest fund", to be held pending a determination of the protests in accordance with the provisions of 62 O.S. 206 [62-206] (1961), or whether he is to deposit the premium taxes paid under protest into the general fund as provided for in Senate Bill 351 of the 1971 Legislature. The first caveat which must be mentioned preliminarily, is that the State Insurance Commissioner has the statutory duty under 62 O.S. 206 [62-206] (1961) to determine whether a proper protest has been filed with his office before he makes the decision of whether the taxes are to be placed in a "protest fund". There are four elements necessary to constitute a proper protest under the provisions of 62 O.S. 206 [62-206] (1961). (1) The protest must be made "at the same time" the full amount of the taxes are paid. (2) The protestor must give notice of his complaint "in writing". (3) The notice must be given in writing "that suit will be brought" against the collecting officer. (4) The protestor must give written notice to the collecting officer "stating the grounds of his complaint". Unless a purported protest contains these required elements, the State Insurance Commissioner would not be authorized under the provisions of 62 O.S. 206 [62-206] (1961) in diverting the taxes to a "protest fund". In the case of Brown v. State Election Board,369 P.2d 140 (Okla., 1962), the Court stated in the body of its opinion: "Public officers have only such authority as is conferred upon them by law, and such authority must be exercised in the manner prescribed by law." In determining whether these funds are to be deposited in a protest fund or to be paid into the general fund of the State, the provisions of 62 O.S. 1961 206 [62-206] and Section 3 of Senate Bill 351 of the 1971 Legislature must be reconciled. Section 3 of Senate Bill 351 is merely a pronouncement of what the duty of the State Insurance Commissioner is in regard to the transfer of these funds to the general fund, except that it shortens the time within which he would otherwise be allowed by other statutory authority. The provisions of 62 O.S. 206 [62-206] (1961) deals specifically with the duty of a State officer in the depositing of funds in the event the fees or taxes are paid under protest. Title 62 O.S. 206 [62-206] (1961) was enacted in 1945 and was not specifically or inferentially repealed by the provisions of Senate Bill 351 of the 1971 Legislature. Where there are two statutes upon the same subject, the earlier being special and the later being general, the special statute remains in effect as an exemption to the general unless absolute incompatibility exists between the two, and all matters competing within the scope of the special statute are governed by its provisions. Missouri, K. T. Ry. Co. v. Jackson, 174 F.2d 297 (C.A. Okla., 1949). Also, where there are two statutory provisions, one of which is special and clearly includes the matter in controversy, and prescribes different rules and procedures from those in the general statute, the special statute, and not the general statute, applies. Reubin v. Thompson, 406 P.2d 263, (Okla., 1965). A later statute, which is general in its terms and does not expressly repeal a prior special statute, will ordinarily not affect the special provisions of an earlier statute. Crosbie v. Partridge, 205 P. 758, (Okla., 1922). It is the opinion of the Attorney General that your second question be answered in the following manner. Section 3 of Senate Bill 351 of the 1971 Legislature is general in its terms and does not expressly repeal the different rules and procedures contained in the earlier specific statute, 62 O.S. 206 [62-206] (1961). The provisions of 62 O.S. 206 [62-206] (1961) are to be controlling where proper protests are entered to the payment of the annual premium taxes provided for in Senate Bill 351 of the 1971 Legislature. The pre-payments of annual premium taxes received by the State Insurance Commissioner are to be placed in a special trust fund in the State Treasury known as the State Insurance Commissioner's "protest fund" in the event proper protests are received from the taxpayers at the same time that the taxes are paid. From and after the time of the receipt of the taxes, they are to be considered as being constructively held by the general fund of the State, subject only to being paid as reimbursement to the taxpayers or being allocated as otherwise provided for by law. (Odie A. Nance)