# United States Court of Appeals for the Federal Circuit

---

**VIRNETX INC.,**
*Appellant*

v.

**APPLE INC., CISCO SYSTEMS, INC.,**
*Appellees*

---

2017-1591, 2017-1592, 2017-1593

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. 95/001,788, 95/001,789, 95/001,856.

---

Decided: August 1, 2019

---

STEPHEN BLAKE KINNAIRD, Paul Hastings LLP, Washington, DC, argued for appellant. Also represented by NAVEEN MODI, JOSEPH PALYS, IGOR VICTOR TIMOFEYEV, MICHAEL WOLFE, DANIEL ZEILBERGER.

WILLIAM F. LEE, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, argued for appellee Apple Inc. Also represented by REBECCA A. BACT, MARK CHRISTOPHER FLEMING, LAUREN B. FLETCHER, DOMINIC E. MASSA; BRITTANY BLUEITT AMADI, Washington, DC; SCOTT BORDER, JEFFREY PAUL KUSHAN, Sidley Austin LLP, Washington, DC.

THEODORE M. FOSTER, Haynes & Boone, LLP, Dallas, TX, argued for appellee Cisco Systems, Inc. Also represented by DAVID L. MCCOMBS, ANDREW S. EHMKE, DEBRA JANECE MCCOMAS.

———————————

Before PROST, *Chief Judge,* MOORE and REYNA, *Circuit Judges.*

Opinion for the court filed by *Chief Judge* PROST.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* REYNA.

PROST, *Chief Judge*.

Appellant VirnetX Inc. ("VirnetX") appeals from decisions of the Patent Trial and Appeal Board ("Board") related to three inter partes reexaminations maintained by Apple Inc. ("Apple") and Cisco Systems, Inc. ("Cisco"). The United States Patent and Trademark Office ("PTO") concluded that Apple was not barred from maintaining its reexams by the estoppel provision of the pre-America Invents Act ("AIA") version of 35 U.S.C. § 317(b) (2006). The Board affirmed the Examiner's determination that the claims of U.S. Patent Nos. 7,418,504 ("the '504 patent") and 7,921,211 ("the '211 patent") are unpatentable as anticipated or obvious over the prior art of record. For the reasons below, we affirm-in-part, vacate-in-part, and remand.

BACKGROUND

I

The '504 and '211 patents describe systems and methods for "establishing a secure communication link between a first computer and a second computer over a computer network, such as the Internet." '211 patent col. 6 ll. 36–39. These systems and methods are "built on top of the existing Internet protocol (IP)." *Id.* at col. 6 ll. 17–20.

The Internet uses addressing systems for sending data. In such systems, physical computers can be identified by a unique IP address (e.g., 123.345.6.7). *VirnetX Inc. v. Apple Inc.*, 665 F. App'x 880, 882 (Fed. Cir. 2016).

Each IP address corresponds to a domain name (e.g., www.Yahoo.com). *See* '211 patent col. 38 ll. 58–61, col. 39 ll. 13–14. A user on one computer can enter a domain name in a web browser to communicate with another computer or server. When the user does so, the computer sends a domain name service ("DNS") request to the domain name server for the IP address corresponding to a given domain name. *Id.* at col. 38 l. 58–col. 39 l. 3. The domain name server then looks up the IP address of the requested domain name and returns it to the requesting computer. *Id.* at col. 39 ll. 3–7.

Both VirnetX patents claim systems, methods, and media for creating secure communication links via DNS systems. For example, claim 1 of the '211 patent recites:

1. A system for providing a domain name service for establishing a secure communication link, the system comprising:

a domain name service system configured and arranged to

[1] be connected to a communication network,

[2] store a plurality of domain names and corresponding network addresses,

[3] receive a query for a network address, and

[4] indicate in response to the query whether the domain name service system supports establishing a secure communication link.

Independent claims 36 and 60 of the '211 patent are directed to a "machine-readable medium" and a "method," respectively. Otherwise, they mirror the requirements of claim 1. Independent claims 1, 36, and 60 of the '504 patent are similar to the corresponding independent claims of the '211 patent.

## II

In 2010, VirnetX sued Apple in district court. VirnetX alleged infringement of four patents, including the '504 and '211 patents.[1] VirnetX asserted claims 1, 2, 5, 16, 21, and 27 of the '504 patent and claims 36, 37, 47, and 51 of the '211 patent. *VirnetX Inc. v. Apple Inc.*, 925 F. Supp. 2d 816, 824–25 (E.D. Tex. 2013).

In October 2011, Apple filed requests for inter partes reexamination of the '504 and '211 patents with the PTO. In Apple's Reexam Nos. 95/001,788 ("788 case") and 95/001,789 ("789 case") (collectively, "Apple reexams"), Apple challenged all claims as anticipated by the Provino reference or rendered obvious by Provino in view of other prior art.[2]

The district court action proceeded to trial in late 2012. A jury found the asserted claims infringed and not invalid. The jury awarded VirnetX $368 million in damages. *VirnetX*, 925 F. Supp. 2d at 825. The district court denied Apple's motion for judgment as a matter of law ("JMOL") or a new trial on these issues. Apple appealed.

On appeal, we affirmed the jury's finding of no invalidity for all four patents. *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1323–24 (Fed. Cir. 2014) ("*VirnetX I*"). We also

---

[1] VirnetX also alleged that Apple infringed certain claims of U.S. Patent Nos. 6,502,135 ("the '135 patent") and 7,490,151 ("the '151 patent").

[2] U.S. Patent No. 6,557,037 ("Provino").

affirmed the jury's finding of infringement for many of the claims of the two patents not related to the present appeal ('135 and '151 patents).[3] *Id.* at 1320–22. We reversed the district court's construction of the "secure communication link" claim term, vacated the related infringement finding for the two patents in this appeal ('504 and '211 patents), and vacated the damages award. *Id.* at 1317–19, 1319, 1323–24, 1325–34. We then remanded for further proceedings.[4] *Id.* at 1334.

Apple did not file a request for rehearing on the invalidity or infringement issues affirmed in *VirnetX I*. Our mandate issued on December 23, 2014. Apple did not seek Supreme Court review. The 90-day period to file a petition for a writ of certiorari expired.

Meanwhile, in the parallel PTO reexamination proceedings, the Examiner had found all claims of the '504 and '211 patents unpatentable. The Examiner issued Right of Appeal Notices ("RANs") in May 2014. VirnetX appealed the Examiner's decisions to the Board.

VirnetX also petitioned the PTO to terminate the Apple reexams based on the estoppel provision of § 317(b). The PTO denied VirnetX's petition in June 2015. J.A. 1659–67, 3138–48.

In September 2016, the Board affirmed the Examiner's findings that all claims of the '504 and '211 patents were

---

[3] We reversed the district court's conclusion related to the doctrine of equivalents for one claim of the '151 patent. *See id.* at 1322–23.

[4] On remand in 2016, a jury found that Apple infringed claims 1, 2, 5, and 27 of the '504 patent and claims 36, 47, and 51 of the '211 patent, and awarded damages. *VirnetX Inc. v. Apple Inc.*, 324 F. Supp. 3d 836 (E.D. Tex. 2017). We recently affirmed. *See VirnetX Inc. v. Cisco Sys., Inc.*, No. 2018-1197, 748 F. App'x 332 (Fed. Cir. 2019).

unpatentable. The Board denied VirnetX's requests for rehearing.

After appealing the Board's decisions in the Apple reexams to this court, VirnetX moved to remand. It argued that this court's 2014 opinion was a "final decision" on Apple's attempt to prove invalidity under § 317(b). ECF No. 27. In June 2017, a motions panel denied the motion and directed the parties to address the issue in their merits briefing. ECF No. 36.

## III

In December 2011, Cisco also filed a request for inter partes reexamination with the PTO.[5] Cisco's Reexam No. 95/001,856 ("856 case" or "Cisco reexam") challenged claims 1–60 of the '211 patent based on multiple grounds of invalidity. Cisco based several of its arguments on the Lendenmann reference.[6]

After extensive proceedings, the Examiner issued a RAN in January 2015. The RAN rejected claims 36–60 of the '211 patent as either anticipated or obvious. VirnetX appealed to the Board. In September 2017, the Board affirmed the Examiner, finding claims 36–54 and 57–60 anticipated by Lendenmann and claims 55 and 56 obvious over Lendenmann and another reference. J.A. 88. VirnetX moved for rehearing, which was denied. VirnetX then appealed.

We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

---

[5]   In 2010, VirnetX also sued Cisco in district court, alleging inter alia infringement of claim 1 of the '211 patent.

[6]   Rolf Lendenmann, *Understanding OSF DCE 1.1 for AIX and OS/2, IBM International Technical Support Organization*, pp. 1–45 (Oct. 1995) ("Lendenmann").

DISCUSSION

I

VirnetX's appeal proceeds in two parts. First, VirnetX argues as a threshold matter that Apple was estopped from maintaining its reexams under the pre-AIA version of 35 U.S.C. § 317(b) (2006). Second, VirnetX challenges the merits of the Board's conclusions in both the Apple and Cisco reexams that the '504 and '211 patents are invalid. We address each in turn.

II

VirnetX contends that Apple's reexams were barred by § 317(b). The PTO refused to terminate Apple's reexams based on the conclusion that the provision did not apply. In VirnetX's view, the PTO's decision was inconsistent with controlling case law, the statutory text, and Congress's intent. We agree.

The applicability of § 317(b) is a question of statutory interpretation. *See Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 639, 642–48 (Fed. Cir. 2011). Statutory interpretation is an issue of law we review de novo. *Unwired Planet, LLC v. Google Inc.*, 841 F.3d 1376, 1379 (Fed. Cir. 2016).

The Patent Act requires that the PTO terminate a reexamination once there has been a final decision on the patent challenger's invalidity case in federal court. 35 U.S.C. § 317(b) (2006). Specifically, pre-AIA § 317(b) provides:

Once a final decision has been entered against a party in a civil action arising in whole or in part under section 1338 of title 28, *that the party has not sustained its burden of proving the invalidity* of any patent claim in suit . . . then neither that party nor its privies may thereafter request an inter partes reexamination of any such patent claim on the basis of issues which that party or its privies raised

or could have raised in such civil action or inter partes reexamination proceeding, and an inter partes reexamination requested by that party or its privies on the basis of such issues may not thereafter be maintained by the Office, notwithstanding any other provision of this chapter.

The issue here is very narrow. Apple does not dispute the underlying procedural facts relevant to § 317(b), which highlight the advanced stage of these proceedings.

In 2010, Apple was sued for patent infringement. There is no dispute that in that "civil action arising . . . under" 28 U.S.C. § 1338, Apple raised an affirmative defense of invalidity on multiple grounds. 35 U.S.C. § 317(b). Thus, Apple had the "burden of proving the invalidity" of the asserted claims of both the '504 and '211 patents. *Id.*

In 2012, Apple presented its invalidity defenses to a jury. After a week-long trial, the jury concluded Apple failed to sustain its burden of proving the invalidity of any asserted claim of the '504 or '211 patent.

In 2013, the district court determined that in light of the record at trial, substantial evidence supported the jury's finding. The district court entered final judgment.

In 2014, Apple pursued an appeal of that decision here. Specifically, Apple argued that "the asserted claims are anticipated by the Kiuchi reference." *VirnetX I*, 767 F.3d at 1323. After considering Apple's challenges, we affirmed the district court's decision on the issue of invalidity. *Id.* at 1323–24. Apple did not file a request for rehearing. Apple elected not to seek Supreme Court review. The 90-day period to file a petition for certiorari expired.

In 2015, VirnetX petitioned the PTO to terminate Apple's pending reexaminations based on the estoppel provision of § 317(b). The PTO refused, accepting Apple's argument that there was not yet a final decision on validity. J.A. 1661–63.

On appeal, the sole issue is whether there has been a "final decision" entered against Apple that it "has not sustained its burden of proving" invalidity, triggering estoppel of its parallel PTO reexam proceedings.

Apple does not dispute that since it first raised the issue in 2010, it has now lost on invalidity before the jury, the district court, and this court. Nor does it dispute that it allowed the time to petition for certiorari of the validity issues in the first appeal to lapse. Instead, Apple takes the position that there was no final decision due to a hypothetical future appeal.

Apple's argument proceeds as follows. In *VirnetX I*, we vacated and remanded other issues unrelated to invalidity, including infringement and damages. In Apple's view, after those issues are decided on remand and reviewed in a second appeal, it may choose to file a petition for certiorari of those non-validity issues. In so doing, it may also ask the Supreme Court to look at any issues from the first appeal—including the validity determination.

Thus, the Court might elect to examine the validity issues at some point in the future. The Court has the ability to consider not only those issues "'before the court of appeals upon the second appeal,'" but also the "questions raised on the first appeal." *Mercer v. Theriot*, 377 U.S. 152, 153–54 (1964) (per curiam) (quoting *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 257 (1916)); *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 508 n.1 (2001) (per curiam) (noting Supreme Court has "authority to consider questions determined in earlier stages of the litigation where certiorari is sought from the most recent of the judgments of the Court of Appeals"). According to Apple, the decision is only final when there is *no potential* that the Supreme Court might some day examine the invalidity issue during a second appeal.

In response, VirnetX contends there is a "final decision" on a party's attempt to prove invalidity after the party fails to petition for certiorari within the 90-day period.

Two reasons compel the conclusion that there has been a final decision on validity in this case. First, our decision in *Fairchild (Taiwan) Corp. v. Power Integrations, Inc.*, 854 F.3d 1364 (Fed. Cir. 2017), controls and holds that there is a "final decision" under § 317(b) once the time to file a certiorari petition has passed. Second, even if *Fairchild* did not foreclose Apple's argument, the plain language of the statute and its purpose advise against Apple's definition of a "final decision" on the issue of invalidity.

## A

Since the PTO's decision in 2016, we have ruled on this very issue. *Fairchild* directly addressed a situation in which validity was affirmed but other issues in the case were remanded. *Fairchild* holds that if a finding of no invalidity has been affirmed on appeal and remand of other issues will not "have any affect" on validity, the decision is "final" once the 90-day deadline for a certiorari petition on the validity determination has passed. *Id.* at 1366. *Fairchild* announced this holding despite the fact that there is always some "potential" for future Supreme Court review if the entire case is taken up. Accordingly, *Fairchild* requires we reject Apple's position.

In *Fairchild*, we began our analysis by restating our earlier holding in *Bettcher* that estoppel "applies when 'all appeals have terminated.'" *Id.* at 1365 (quoting *Bettcher*, 661 F.3d at 646). We then concluded that is "precisely the situation here." *Id.* Namely, the district court "entered judgment against Power Integrations, holding that it failed to prove claims 6, 7, 18, and 19 were obvious over [the cited prior art]. This court affirmed the holding, and *the time to*

*petition for a writ of certiorari* has passed." *Id.* at 1365–66 (emphasis added).

As in *Fairchild*, the district court here entered judgment against Apple on the issue of invalidity, we affirmed the no-invalidity finding on appeal in *VirnetX I*, and the time to file a petition for certiorari on the issue has long since passed. Under *Fairchild*, that constitutes "a final decision" under § 317(b) with respect to Apple's failure to prove invalidity.

Resisting this conclusion, Apple argues that if *any* non-invalidity issues remain in the district court case related to the patent, then the validity decision cannot be final under § 317(b). Since *VirnetX I* vacated and remanded other issues (i.e., infringement and damages) on both patents at issue, Apple contends that it waited until all the issues with this patent case are decided before bundling it up in a petition for certiorari. Consequently, Apple's position requires resolution of the *entire case*—or at least all issues on each patent, including infringement, invalidity, and damages—before a validity decision is considered "final."

*Fairchild* rejected such arguments under almost identical circumstances. There, we had also vacated and remanded other parts of the case for additional proceedings. *Id.* at 1365 (explaining prior appeal upheld obviousness but reversed jury's findings on infringement, and "remanded for further proceedings unrelated to the '972 patent claims"). In turn, we rejected the argument that this renders the decision not "final" under § 317(b). *Id.* at 1366. We reasoned:

> While it is true that in [the prior appeal] this court vacated and remanded for additional proceedings, we cannot agree with Power Integrations that this renders the decision not "final" for § 317(b) purposes. Critically, those proceedings are unrelated to the '972 patent. By its terms, § 317(b) is

concerned with a final decision 'that the party has not sustained its burden of proving the invalidity of any patent claim.' And here, Power Integrations does not suggest, nor is there any reason to believe, that any unresolved issue on remand *would have any effect on* the now-final '972 patent validity determinations.

*Id.* (emphasis added) (quoting 35 U.S.C. § 317(b)).

Likewise, here, Apple does not point to any issue in the *VirnetX I* remand that substantively bears on the finding of no invalidity. Nor could it. Indeed, the only difference here is that *VirnetX I* remanded some infringement and damages issues related to the '504 and '211 patents. But Apple fails to explain how any of these unresolved issues would "have any effect on the now-final . . . validity determinations" involving those patents.[7] *Id.* Accordingly, *Fairchild*'s reasoning leaves no doubt that § 317(b) estoppel applies.

Finally, Apple contends *Fairchild* cannot control because no party in that case expressly argued that the Supreme Court might still take up the invalidity issue on a future appeal under *Mercer*. But *Fairchild*'s reasoning implicitly forecloses such an argument. *Fairchild* concluded that "*all* appeals" had terminated, 854 F.3d at 1365,

---

[7]    At oral argument, Apple could not point to a single example illustrating how an aspect of the infringement remand might meaningfully affect or implicate the invalidity ruling this court affirmed in 2014 in *VirnetX I*. Instead, Apple offered only speculation. Its argument boiled down to the general conjecture that the district court "could" have a motion to set aside a validity determination even after the mandate issues based on arguments made about infringement. Oral Argument at 29:20–51, No. 2017-1591, http://www.cafc.uscourts. gov/oral-argument-recordings.

despite the fact that other issues in that case remained pending for potential appeal and petition for certiorari. Apple can disagree with that conclusion, but that is not a basis for ignoring binding authority. We are bound to follow the decision of a prior panel, and its reasoning does not leave the question open.

In sum, § 317(b) applies here despite the fact that issues unrelated to invalidity were remanded.

The dissent takes the view that *Fairchild* is inapplicable. But it relies on reasons that were not material to the outcome in *Fairchild*. In addition, the dissent's attempt to distinguish *Fairchild* suffers from several additional infirmities.

According to the dissent, in *Fairchild* "Power Integrations did not appeal the court's favorable ruling *on infringement* because it prevailed on that issue." Opinion concurring in part and dissenting in part ("dissent") at 4 (emphasis added). In turn, the dissent leaps to the conclusion that Power Integrations could not have realistically pursued certiorari review of the '972 patent's *validity* because it "prevailed" on infringement. *Id.* In the dissent's view, "once Power Integrations prevailed on infringement, the case against it was concluded" and the potential for any further Supreme Court review was eliminated. *Id.* at 4–5. There is no support for these statements.

Fundamentally, infringement and invalidity are separate "issues." *Pandrol USA, LP v. Airboss Ry. Prod., Inc.*, 320 F.3d 1354, 1364 (Fed. Cir. 2003) ("Supreme Court precedent and our cases make clear that patent infringement and patent validity are treated as separate issues."). *Fairchild* never held that resolving infringement resolves invalidity. Indeed, *Fairchild* was interpreting an estoppel statute triggered by a decision on *invalidity*, not infringement.

Moreover, the dissent's position unravels in light of the procedural posture in *Fairchild*. Power Integrations did not simply argue that it did not infringe the '972 patent. Nor did it merely raise invalidity as an affirmative defense to liability. Rather, Power Integrations advanced a separate counterclaim for declaratory judgment that the '972 patent was invalid. *See* Plaintiff's Fourth Amended Answer and Counterclaims at 23, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc. et al*, No. 1:08–cv–00309–LPS (D. Del. July 7, 2011) (Dkt. No. 409). Therefore, to say it "prevailed" and its case "concluded" on that issue due to a non-infringement ruling is not correct.

It is black letter law that non-infringement does not moot a counterclaim regarding invalidity. "A party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement." *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 96 (1993). Thus, "appellate affirmance of a judgment of noninfringement, eliminating any apprehension of suit, does not moot a declaratory judgment counterclaim of patent invalidity." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 132 n.11 (2007); *see also Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1375 (Fed. Cir. 2010) ("[T]his court's affirmance of the district court's non-infringement findings as to the '306 patent does not moot Cisco's invalidity counterclaim on cross-appeal.").

In addition, the dissent speculates as to *why* the litigant chose not to seek further review. The dissent appears to assume that if a party is found not liable for certain accused products infringing a patent, as in *Fairchild*, that party no longer has the incentive to challenge the underlying property right's validity. Dissent at 5–6. This assumption fails for several reasons. First, inferring the subjective intent of the litigants—either on remand or in petitioning for certiorari—is inappropriate. *Fairchild* never made such fact findings. *Fairchild* never relied on such inferences either. Put simply, *Fairchild* did not base its decision

on speculation as to whether remand would impact a party's subjective "decision" to pursue certiorari review or whether its decisions regarding petitioning were "reasonable," *id.* at 5–6. Second, such speculation is irrelevant. The controlling inquiry is mandated by statute, which makes no mention of a party's motives for petitioning for certiorari review. Third, it is inaccurate. Regardless of a finding of no liability on the presently accused products, an accused infringer may well have reasons for trying to invalidate the patent (e.g., to guarantee its freedom to operate).

But the dissent suffers from a more fundamental flaw. The dissent appears to suggest that in *Fairchild*, "potential future review" by the Supreme Court was not an option. *Id.* at 4. In light of *Mercer*, there is no basis for that position. Indeed, it runs headlong into the dissent's own insistence that the Supreme Court's discretion to take up certiorari review of earlier issues in a case is broad. On the one hand, the dissent acknowledges that a "petition for writ of certiorari can expose the entire case to review," *id.* at 10 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)), and the Supreme Court has "jurisdiction to consider all of the substantial federal questions determined in the earlier stages of the litigation," *id.* (quoting *Reece v. Georgia*, 350 U.S. 85, 87 (1955)). On the other hand, the dissent contends that the litigant's decision in *Fairchild* "all but foreclosed the possibility that the invalidity issue could be subject to potential future review by the Supreme Court." *Id.* at 4. A plain reading of *Fairchild*, however, confirms it never presumed to curtail the Supreme Court's discretion under *Mercer* to review issues raised earlier in a case.

Finally, the dissent is concerned that the majority opinion somehow "intrudes on the Supreme Court's constitutional prerogative whether to take up the invalidity issue." *Id.* at 11. It does not. Like *Fairchild*, our decision concerns estoppel of duplicative administrative proceedings *before the PTO*. It has no bearing on the Supreme Court's

discretion to accept or reject a petition for certiorari on any issue—nor could it.

In sum, we disagree with the dissent's efforts to rewrite *Fairchild*. *Fairchild* speaks for itself. The controlling statute is trained on a "final decision" that the party has not sustained its "burden of proving the invalidity" of the patent claim. *Fairchild*, 843 F.3d at 1366. As the dissent acknowledges, the reasoning at the heart of the *Fairchild* decision is that estoppel applied to the duplicative PTO reexam because there was "no suggestion," dissent at 6, that "any unresolved issue on remand would have any effect on the now-final patent validity determinations" from the district court, *Fairchild*, 854 F.3d at 1366. That is, the remand would have no substantive effect on the validity determination. The record is clear that is the same situation here.

B

Even if *Fairchild* did not control, the statutory text and purpose of § 317(b) compels us to reject Apple's theory that the entire case must be resolved. Apple essentially asks us to rewrite the statute, triggering estoppel only when there is a "final judgment" on all issues in a case.

But the statute's text is clear. The statute only requires "a final decision" on a precise issue—whether the party has "sustained its burden of proving the invalidity of any patent claim in suit." 35 U.S.C. § 317(b). The statute makes no mention of resolving the entire case. Nor does it require resolution of all other issues related to a patent (e.g., infringement or damages). Instead, the plain language of the statute demands a party cease duplicative invalidity challenges via reexams in the PTO once "a final decision" has been reached on an invalidity challenge in a civil action.

This reading of the plain text is further reinforced by the statute's purpose. The statute is intended to protect

patent holders against "harassment" from duplicative litigation on the issue of invalidity. *See* 145 Cong. Rec. 29,276 (Nov. 9, 1999) (Conference Report on H.R. 1554) ("Subtitle F creates a new section 317 which sets forth certain conditions by which inter partes reexamination is prohibited to guard against harassment of a patent holder."); *see also Function Media, L.L.C. v. Kappos*, 508 F. App'x 953, 955–56 (Fed. Cir. 2013) ("This provision existed to prevent duplicative, harassing actions against a patentee. If a defendant brought an invalidity challenge in a district court litigation and was unsuccessful, it is not permitted to bring the same challenge in an inter partes reexamination.").

Apple concedes that § 317(b) was intended to prevent duplicative litigation. Apple's Br. 40–41. Yet Apple's position increases the likelihood duplicative litigation will occur. If no decision on invalidity is "final" until any "prospect of future Supreme Court review" is eliminated, Apple's Br. 36, estoppel will rarely apply. In light of the legislative intent, it is doubtful Congress created an estoppel provision that would allow a PTO proceeding to press forward even after all appellate deadlines have elapsed merely because there is a potential that the Supreme Court may one day reconsider the invalidity issue—in many cases, years later—while examining the rest of the case.[8]

Accordingly, the statutory purpose confirms that "a final decision" triggers estoppel when the invalidity challenge is decided on appeal and the time for petitioning for certiorari has passed—regardless of the fact review of the

---

[8]     Moreover, there is no indication that Congress considered the type of review contemplated in *Mercer* as part of the definition of a regular appeals process for reaching a "final decision" on invalidity. This is of no surprise given the statute is trained on the finality of a particular issue, rather than finality of the entire case.

entire case *could* occur at some point in the future under *Mercer*.

C

Apple's remaining arguments against the application of § 317(b) here are unpersuasive. Apple first suggests that *Fairchild* is inconsistent with *Bettcher*. Apple's Br. 32–33, 37. In Apple's view, *Bettcher* held that § 317(b) is not satisfied until the Supreme Court can no longer review a case.

*Bettcher* never reached such a holding. *Bettcher* concerned a different estoppel provision, pre-AIA 35 U.S.C. § 315(c) (2006).[9] The question was whether § 315(c) estoppel attaches at a far earlier stage (before any appeal is pursued). In *Bettcher*, the district court concluded that estoppel barred further civil litigation "as soon as the examiner finished the reexamination and the Right of Appeal Notice was sent to the patentee"—i.e., before there is even an appeal to the Board, let alone an appeal to the Federal Circuit. *Id.* at 636. On appeal, we rejected that conclusion. We held that "the estoppel provision of § 315 is triggered not when examination is completed but only after all appeal rights have been exhausted." *Id.* at 642–43.

The panel then rejected the argument that § 317(b) somehow showed that § 315(c) estoppel must apply as soon as the examiner finishes the reexam. *See id.* at 643. The panel observed that like § 315(c), estoppel under § 317(b) applies "when reexamination *and* all appeals have terminated." *Id.* at 646 (emphasis added).

*Bettcher* addressed appeal rights to the Board and the Federal Circuit. It did not analyze how petitions for

---

[9]    Section 315(c) concerns estoppel in the opposite direction: when the PTO's determination in a reexam estops a party from asserting invalidity in a civil action. *Id.* at 643.

certiorari impact § 317(b).[10] Moreover, *Bettcher* did not address the critical inquiry here as to whether a "final decision" regarding the issue of invalidity under § 317(b) is affected by remand of issues unrelated to invalidity.

By contrast, *Fairchild* did reach these issues. *Fairchild* held that estoppel "applies when 'all appeals' have terminated," meaning after the district court's judgment of no-invalidity was affirmed on appeal and "the time to petition for a writ of certiorari has passed." *Id.* at 1365–66 (quoting *Bettcher*, 661 F.3d at 646). The panel reached this conclusion despite the fact that issues unrelated to patent validity were remanded for further proceedings. Properly understood, *Fairchild* is an extension of *Bettcher* to Supreme Court certiorari review. Apple's attempt to

---

[10] *Bettcher* concluded that the estoppel provision of § 315 attaches when all appeal *rights* are exhausted. As the panel observed, the opening sections of the statute list those appeal "rights" for both the patent owner and the third-party requestor, § 315(a)–(b), which consist of appeals from (1) the examiner to the Board, and (2) the Board to this court. *Id.* at 644 ("The estoppel provision of subsection (c) thus falls immediately following the establishment of both parties' rights of appeal, including appeal to this court."). *Bettcher* did not address whether petitions for certiorari are considered "appeals," or whether certiorari review by the Supreme Court is a "right." In VirnetX's view, an appeal as of right is a different procedural mechanism than a writ of certiorari. VirnetX Reply Br. 12–13; *see also City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("Because certiorari jurisdiction exists to clarify the law, its exercise 'is not a matter of right, but of judicial discretion.'" (quoting Supreme Court Rule 10)). Though we need not reach such questions, they underscore the fact that *Bettcher* simply did not reach the issue of certiorari review now governed by *Fairchild*.

manufacture an inconsistency between these two cases has no merit.

Apple's reliance on *Fresenius* fares no better. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013). Apple concedes that *Fresenius* "did not construe § 317(b)." Apple's Br. 39. As such, Apple admits *Fresenius* has no direct bearing on our interpretation of this statutory estoppel provision.

In addition, *Fresenius* concerned an entirely different issue involving res judicata from a "final judgment." Even within the distinct realm of res judicata, *Fresenius* took great care to "distinguish between different concepts of finality." *Id.* at 1340. In *Fresenius*, we specifically addressed whether a judgment in an infringement case is "sufficiently final" so that it is "immune to the effect of the final judgment in the PTO proceedings, as affirmed by this court in *In re Baxter*." *Id.* at 1341 (discussing *In re Baxter Int'l, Inc.*, 678 F.3d 1357 (Fed. Cir. 2012)).

The issue in *Fresenius* arose due to the fact that while the appeal of an infringement action was pending, we affirmed the PTO reexamination finding the patent claims invalid in *In re Baxter*. As a result, the PTO canceled the claims. *Id.* at 1335. Despite the intervening cancellation, the patent owner argued that the district court's judgment was "final" for purposes of res judicata such that the liability finding and past damages award in the pending litigation could not be disturbed. *Id.* at 1340. We disagreed.

While the district court in 2007 had entered "a judgment final for purposes of appeal," we concluded that it was "not sufficiently final to preclude application of the intervening final judgment in *In re Baxter*." *Id.* at 1341. Moreover, the district court's original judgment had since been set aside and the remand was not sufficiently final for res judicata purposes. *Id.* "To rise to that level, the litigation must be entirely concluded so that [the] cause of action [against the infringer] was merged into a final judgment

. . . one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* (quoting *Mendenhall v. Barber–Greene Co.*, 26 F.3d 1573, 1580 (1994)). We concluded that the remand did not end the controversy, leaving only the execution of the judgment, given that several aspects of the litigation (e.g., royalty damages, injunctive relief) remained unresolved. *Id.*

*Fresenius*'s analysis of a "final judgment" for purposes of res judicata does not instruct our understanding of a "final decision" for purposes of § 317(b) estoppel. Indeed, it only underscores why we must follow *Fairchild*. *Fairchild* found estoppel absent a final judgment. Indeed, after multiple other issues in the litigation, including infringement and damages for certain patents, were remanded, *Fairchild* concluded nonetheless that there was a "final decision" on the narrow issue of invalidity—which is all that the statute requires to trigger estoppel. The reasoning in *Fairchild*, not *Fresenius*, governs our application of § 317(b).

Apple also briefly argues that this interpretation of the statute generates duplicative proceedings for the patent challenger. Apple's Br. 41. In Apple's view, it must seek "interlocutory" review rather than waiting for the case to be entirely resolved. *Id.* Apple's argument misses the mark. Section 317(b) is concerned with preventing duplicative litigation against the patent owner. Of course, we recognize the challenging nature of these proceedings for both parties. The present actions involve multiple patents and various issues, which create certain complexities for pursuing appeals before this court and seeking certiorari before the Supreme Court. Some of those complexities might be ameliorated by requiring final judgment of an entire case. But that does not empower us to rewrite a statute that requires only a final decision on the issue of invalidity. Furthermore, such interlocutory and piecemeal concerns were also present in *Fairchild*. Nonetheless, estoppel applied.

Finally, Apple's arguments based on the PTO's interpretations carry no force. They fail for several reasons.

First, Apple fails to explain why the PTO's interpretations of § 317(b) is entitled to *Chevron* deference. As discussed above, the statutory text and purpose leave no ambiguity. Where "the intent of Congress is clear, that is the end of the matter." *Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837, 842 (1984). Therefore, *Chevron* deference does not apply.[11] [12]

Second, *Skidmore* deference is not appropriate either. Under *Skidmore*, the weight given to a particular agency interpretation "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking

---

[11] Apple also suggests that *Bettcher* requires deference. Not so. *Bettcher* concluded the statute was unambiguous. *Bettcher*, 661 F.3d at 646 ("[W]e believe that § 317(b) is clear . . . ."). Nonetheless, Apple points to *Bettcher*'s subsequent discussion of the deference it "would" give the MPEP had it reached the issue. *Id.* Apple's reliance on a single line of dicta from *Bettcher* is unavailing. Even if it were not dicta, *Bettcher*'s statement concerned deference to the Manual of Patent Examining Procedure ("MPEP") § 2686.04. *Id.* As explained later, that section of the MPEP does not resolve the issue at hand.

[12] Apple also suggests the underlying PTO denial of the petition to terminate here is entitled to *Chevron* deference. In support of this position, Apple cites only to *In re Affinity Labs of Texas, LLC*, 856 F.3d 883, 894 n.5 (Fed. Cir. 2017). The cited footnote from *Affinity Labs* did not concern deference. Rather, it concerned whether PTO rulings on petitions to terminate are reviewable on appeal. *Id.* (analyzing stages of PTO decision-making process as related to reviewability).

power to control." *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). None of the considerations favoring deference are present here. For example, contrary to Apple's position, the PTO has never established a "consistent" construction of § 317(b). Indeed, aside from the decision below, Apple cites no other decision in which the PTO has interpreted § 317(b) to extend passed the deadline for certiorari review of the invalidity issue to hypothetical petitions arising from appeals of non-invalidity issues on remand. Thus, deference is unwarranted.

Third, regardless of whether deference applies, none of Apple's citations resolve the specific issue at hand. For instance, no PTO regulation or MPEP section states that a decision is not "final" for purposes of § 317(b) if non-invalidity issues are remanded. Nor do any of these provisions state that a final judgment is required, or that as long as the potential for Supreme Court review from a later petition exists, § 317(b) estoppel does not attach. Indeed, none of these provisions even mention Supreme Court certiorari review.[13]

For the reasons above, § 317(b) estoppel applies to the Apple reexams. Accordingly, we vacate and remand with

---

[13] Other PTO regulations suggest appeals terminate when our mandate issues. *See, e.g.*, 37 C.F.R. § 1.197 ("An appeal to the U.S. Court of Appeals for the Federal Circuit, whether from a decision of the Board or a judgment in a civil action, is terminated when the mandate is issued by the Court."). Notably, 37 C.F.R. § 1.979, which is the regulation interpreting pre-AIA § 316(a) permitting the PTO to issue a certificate of cancellation "only after all appeals have terminated," *Bettcher*, 661 F.3d at 644–45, applies the same interpretation. *See* 37 C.F.R. § 1.979(b) (providing that an "appeal [to this Court] is considered terminated when the mandate is issued by the Court").

instructions to terminate the Apple reexams with respect
to claims 1–35 of the '504 patent and claims 36–59 of the
'211 patent.[14]

## III

We now turn to VirnetX's challenge to the merits of the
Apple and Cisco reexams that pertain to the claims not
subject to estoppel.  The Board affirmed the Examiner's re-
jection of all claims of the '504 and '211 patents.  On appeal,
VirnetX takes a kitchen sink approach, arguing that the
Board decisions incorrectly construe certain claims, shift
the burden to the patent owner to prove patentability, and
lack substantial evidence.  VirnetX's arguments are unper-
suasive.  Therefore, we affirm the Board's decision on all
remaining claims of both patents in the Apple reexam not
subject to § 317(b) estoppel and fully affirm the Board's de-
cision regarding the claims of the '211 patent in the Cisco
reexam. [15]

---

[14]    Apple appears not to dispute that estoppel extends
to the dependent claims here.  Section 317(b) bars main-
taining a reexam based on issues which that party "raised"
or "could have raised" in the civil action.  The PTO found
that Apple "was aware of all prior art raised prior to Octo-
ber 31, 2012 in the present reexamination proceeding with
respect to claims 1–35 [of the '504 patent], and could have
raised issues with respect to that prior art in the litigation."
J.A. 1666, 3147 (same regarding claims 36–59 of the '211
patent).  No new prior art was added after October 31,
2012, when trial began in the litigation.  Indeed, Apple
never amended or supplemented its original October 18,
2011 reexamination requests to add new prior art.

[15]    The parties filed supplemental briefing regarding
the relationship between this case and other recently de-
cided matters.  ECF Nos. 95, 96, 105.  Apple primarily ar-
gues that collateral estoppel renders various claims of the

VirnetX contends that the Board improperly construed the term "indication" by ignoring its disclaimer argument. VirnetX argued before the Board that the patent disclaimed "conventional" DNS functions—e.g., looking up and returning an IP address or a public key for the requested webpage. In VirnetX's view, such conventional functions therefore do not qualify as "indications" that the system "supports establishing a secure communication link." J.A. 1348, 2892, 4334–41. But the Board expressly acknowledged VirnetX's assertion that the patents "disparaged and disclaimed" systems that use no more than "conventional" DNS functions. J.A. 26–30, 49–54, 77–80. It then rejected this argument in a systematic and well-reasoned fashion. "Disavowal requires 'expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.'" *Epistar Corp. v. ITC*, 566 F.3d 1321, 1335 (Fed. Cir. 2009) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002)). We agree with the Board that the specification fails to evidence such a clear disavowal here. The Board's construction is therefore consistent with the broadest reasonable interpretation of "indication."

Turning to VirnetX's next challenge, VirnetX contends that the Board failed to make adequate findings and impermissibly shifted the burden to VirnetX with respect to three claim limitations of the '504 and '211 patents in the Apple reexams. The limitations are "indicating," "connectable," and "authenticate." Contrary to VirnetX's

---

'504 and '211 patents invalid. As an initial matter, Apple's arguments are mooted in part by our holding in the present matter affirming the Board's decision that certain claims of the '504 and '211 patent are unpatentable. Otherwise, Apple's arguments are unpersuasive. Apple has failed to show why collateral estoppel is appropriate under these circumstances.

arguments, the Board's conclusions are well supported by the underlying factual findings made by the Examiner. The Examiner found that Apple had carried its burden of proving unpatentability by "a preponderance of the evidence." *See Rambus Inc. v. Rea*, 731 F.3d 1248, 1255 (Fed. Cir. 2013) (quoting *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988)). Sitting as an appellate body, the Board then reviewed those findings and considered whether VirnetX had raised any issue on appeal that required setting aside the Examiner's decisions. Although "the examiner retains the burden to show invalidity," on appeal "the applicant must identify to the Board what the examiner did wrong." *In re Jung*, 637 F.3d 1356, 1365–66 (Fed. Cir. 2011). The Board considered VirnetX's arguments challenging the Examiner's rejections and properly explained why each lacked merit. VirnetX "failed to offer any convincing reason to find otherwise." *In re Cree, Inc.*, 818 F.3d 694, 702 n.3 (Fed. Cir. 2016). This "is not burden-shifting." *Id.*

VirnetX further argues that the Board's findings in the Cisco reexam regarding the "indicating" limitations introduced improper new arguments. We disagree. According to VirnetX, the Board relied on a new ground for concluding that Lendenmann's disclosure of "returning a network address" and "access control lists" ("ACLs") meet the claim limitation. The Board's findings constitute a new ground of rejection supporting reopening of prosecution if the Board "finds facts not found by the examiner regarding the differences between the prior art and the claimed invention, and these facts are the principal evidence upon which the Board's rejection was based." *In re Leithem*, 661 F.3d 1316, 1320 (Fed. Cir. 2011). "[T]he ultimate criterion of whether a rejection is considered 'new' in a decision by the [B]oard is whether [applicants] have had fair opportunity to react to the thrust of the rejection." *In re Adler*, 723 F.3d 1322, 1327 (Fed. Cir. 2013) (modifications in original). In

light of the proceedings below, we conclude that VirnetX had a fair opportunity to react to the evidence.

VirnetX also contends that the Board's findings that Lendenmann teaches the "indicating" element lack substantial evidence. However, the Board found Lendenmann's disclosure of "returning a network address," "ACLs," and certain domain names teach the limitation. Based on the record here, there is substantial evidence to support the Board's conclusion that this limitation is taught.

As for the "authenticating" limitation, VirnetX contests the Board's determination that Provino discloses a DNS system configured "to authenticate the query," as recited in dependent claims 5, 23, and 47. VirnetX's arguments do not unsettle the Board's conclusions that Provino's system—including its "query" and "firewall 30"—teach this limitation. Furthermore, contrary to VirnetX's view, no material aspect of the Board's analysis of the relationship between authorization and "authentication" was new or improper. Based on the record developed before the Examiner and reviewed by the Board, substantial evidence supports the Board's conclusions regarding the "authenticating" limitation.

Next, VirnetX argues that the Board failed to address arguments it made in the Cisco reexam as to why dependent claim 47 of the '211 patent is patentable over Lendenmann. There is little indication that VirnetX properly argued claim 47's patentability separately from independent claims 36 and 60. The Board was therefore justified in concluding "Patent Owner does not provide additional arguments in support of" claim 47. J.A. 88. Regardless, the record confirms that based on the Examiner's findings, the Board properly concluded claim 47 was unpatentable.

Finally, VirnetX also argues that the reexams here are unconstitutional. VirnetX took the position that its

challenge would be resolved by the Supreme Court's decision regarding the constitutionality of inter partes review ("IPR") in *Oil States Energy Services, LLC v. Greene's Energy Group, LLC*, 138 S. Ct. 1365 (2018). *See* VirnetX's Br. 66–67 (citing arguments in *Oil States* petition for certiorari that IPRs are unconstitutional under the Seventh Amendment and Article III). While reexams and IPRs arise under different statutes, VirnetX's argument treats them as interchangeable. The Supreme Court has rejected the grounds advanced in *Oil States*. 138 S. Ct. at 1379. VirnetX's challenge is therefore moot.

We have considered VirnetX's remaining arguments and find them unpersuasive.

### CONCLUSION

For the foregoing reasons, we vacate the Board's decisions in the Apple reexams with respect to claims 1–35 of the '504 patent and claims 36–59 of the '211 patent and remand with instructions to terminate. However, we affirm the Board's decisions in the Apple reexams that claims 36–60 of the '504 patent and claims 1–35 and 60 of the '211 patent are unpatentable. We further affirm the Board's decision in the Cisco reexam that claims 36–60 of the '211 patent are unpatentable.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**

### COSTS

The parties shall bear their own costs.

# United States Court of Appeals
# for the Federal Circuit

---

**VIRNETX INC.,**
*Appellant*

**v.**

**APPLE INC., CISCO SYSTEMS, INC.,**
*Appellees*

---

2017-1591, 2017-1592, 2017-1593

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. 95/001,788, 95/001,789, 95/001,856.

---

REYNA, *Circuit Judge*, concurring-in-part and dissenting-in-part.

This appeal involves the Supreme Court's authority to take appeals involving U.S. patents under Article III of the U.S. Constitution.

The majority holds that Apple's petitions for *inter partes* reexaminations are barred under 35 U.S.C. § 317(b) (2006). Although I agree with the majority's disposition of this case in all other respects, I do not agree that reexamination is precluded. Because Apple may still appeal this court's affirmance of no invalidity, there is no "final decision" that triggers a bar under § 317(b). Accordingly, I concur-in-part and dissent-in-part.

I.

This dispute has reached this court once before. In 2010, VirnetX Inc. ("VirnetX") sued Apple Inc. ("Apple") in district court, alleging infringement of four patents, including the two at issue in this appeal, U.S. Patent Nos. 7,418,504 ("the '504 patent") and 7,921,211 ("the '211 patent"). Apple defended on grounds that the patents were invalid. After trial, the jury entered verdicts against Apple that the patents were infringed and not invalid. Apple appealed. We affirmed the jury's finding of no invalidity. *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1323–24 (Fed. Cir. 2014) ("*VirnetX I*"). We reversed the district court's decision on claim construction, vacated the jury's infringement finding and damages award, and remanded for a new trial on those issues. *Id.* at 1317–19, 1323–34. At that time, Apple did not petition for a writ of certiorari on the issue of invalidity.

During the initial district court litigation, Apple filed requests for *inter partes* reexamination of the '504 and '211 patents. After several years of reexamination proceedings, the Examiner found all claims of the '504 and '211 patents invalid, and the Patent Trial and Appeal Board ("Board") affirmed. VirnetX now appeals from the Board's final written decisions[1] on the basis that reexamination of the '504 and the '211 patents was barred under § 317(b).

Section 317(b) provides in relevant part:

Once a final decision has been entered against a party in a civil action arising in whole or in part under section 1338 of title 28, that the party has

---

[1]    In a companion case, Apple also appealed from the judgment of the district court in the trial on remand, in which a jury once again found that Apple infringed the '504 and '201 patents. *See VirnetX Inc. v. Cisco Sys., Inc.*, No. 2018-1197 (Fed. Cir.) ("*VirnetX II*").

> not sustained its burden of proving the invalidity of any patent claim in suit . . . , an inter partes reexamination requested by that party or its privies on the basis of [issues which that party or its privies raised or could have raised in such civil action] may not thereafter be maintained by the Office . . . ."

35 U.S.C. § 317(b) (2006).

In this appeal, we are required to determine whether our prior decision that affirmed the jury's finding of no invalidity is a "final decision" under § 317(b), such that reexamination of the two patents is barred.

## II.

The majority relies on this court's decision in *Fairchild (Taiwan) Corp. v. Power Integrations, Inc.* to hold that "'a final decision' triggers estoppel when the invalidity challenge is decided on appeal and the time for petitioning for certiorari has passed." Maj. Op. 17; *see also id.* at 10–11 (citing 854 F.3d 1364, 1365–66 (Fed. Cir. 2017)). I agree with this formulation of the law, but disagree that Apple's time for petitioning for certiorari on the issue of invalidity has passed.

The majority interprets *Fairchild* to mean that the appellate process terminates once this court issues a decision on any issue and an appeal is not immediately taken. That is not what we held in *Fairchild*. Rather, we held that § 317(b)'s "restriction applies when 'all appeals have terminated.'" *Fairchild*, 854 F.3d at 1365 (quoting *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 646 (Fed. Cir. 2011)). We did not hold "terminate" to mean upon the issuance of our opinion. Nor did we hold that a party is immediately obligated to petition for certiorari once this court resolves an issue of invalidity where other issues involving the same patent remain undecided. We did not consider in *Fairchild* the finality issue that is before the court in this case.

*Fairchild* involved a second appeal in a long-running dispute between Power Integrations and Fairchild. In the first appeal of that litigation, we affirmed the jury's finding of no invalidity and found in favor of Power Integrations on infringement. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1342–45 (Fed. Cir. 2016). We remanded only a *cross-appeal* by Fairchild that related to a wholly different patent. *Id.* at 1345. Power Integrations did not appeal the court's favorable ruling on infringement because it prevailed on that issue. *See Kalka v. Hawk*, 215 F.3d 90, 96 n.9 (D.C. Cir. 2000) (cited in *Pearson v. Callahan*, 555 U.S. 223, 240 (2009)) (explaining that "[n]ormally, a party may not appeal from a favorable judgment" and that the Supreme Court "has apparently never granted the certiorari petition of a party who prevailed in the appellate court"); *see also Bunting v. Mellen*, 541 U.S. 1019, 1023 (2004) (Scalia, J., dissenting from denial of certiorari) ("[O]ur practice reflects a 'settled refusal' to entertain an appeal by a party on an issue as to which he prevailed.").

Power Integrations' decision not to petition for certiorari all but foreclosed the possibility that the invalidity issue could be subject to potential future review by the Supreme Court.[2] Stated differently, once Power

---

[2] The *Power Integrations* case is still proceeding at the district court on remand. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 1:08-cv-00309-LPS (D. Del.). Yet the theoretical possibility that Power Integrations would appeal its unfavorable invalidity ruling was not even argued to this court in *Fairchild*. *See* Power Integrations' Opposition to Fairchild's Motion to Remand at 2–3, *Fairchild*, 854 F.3d 1364 (No. 17-1002); *see also* Fairchild (Taiwan) Corporation's Reply in Support of its Motion to Remand at 2, *Fairchild*, 854 F.3d 1364 (No. 17-

Integrations prevailed on infringement, the case against it was concluded because the only issues remaining pertained to a cross-appeal involving a different patent. Hence, all of *its* appeals terminated at that point.[3] That is not the case here.

In *VirnetX I*, this court vacated the jury's finding of infringement and remanded for a new trial on damages and infringement under the correct claim construction. *VirnetX I*, 767 F.3d at 1314. There is no dispute that at that point, Apple clearly could have petitioned for a writ of certiorari on invalidity. That Apple chose not to appeal is reasonable given the potential for the outcome on remand to drive its decision whether to petition to the Supreme Court

---

1002) (arguing only that a petition for certiorari is not an "appeal" for purposes of § 317(b)).

[3]    The majority asserts that the case against Power Integrations did not conclude at this point because the invalidity issue was separate from the infringement issue, and arose as a counterclaim by Power Integrations for declaratory judgment against Fairchild. Maj. Op. 13–14. This is incorrect. Power Integrations raised invalidity of the relevant patent as both an affirmative defense to infringement and as a counterclaim. *See* Plaintiff's Fourth Amended Answer and Counterclaims at 10, 23, *Power Integrations*, No. 1:08-cv-00309 (D. Del. July 7, 2011), ECF No. 409. Regardless of the procedural posture of the invalidity issue, the majority does not dispute that the remand in *Power Integrations* concerned only issues not related to the patent at issue in *Fairchild*. Power Integrations had no incentive to pursue an appeal on invalidity, because it no longer faced the risk of being found to infringe. The majority correctly acknowledges the impropriety of inferring the subjective intent of litigants in petitioning for certiorari. Maj. Op. 14. That litigation decision should not be dictated by this court, as we have done in this case.

at all.  This is because, had Apple won on infringement on remand, there would then have been no reason for Apple to appeal that decision or the decision on invalidity.

Apple, however, lost on infringement on remand.  *VirnetX Inc. v. Apple Inc.*, 324 F. Supp. 3d 836, 844 (E.D. Tex. 2017).  We affirmed the jury on appeal.  *VirnetX II*, 748 F. App'x 332 (Fed. Cir. 2019).  Now, as the majority recognizes, Apple has a basis on which to petition for certiorari to the Supreme Court on both infringement and invalidity.  Thus, unlike in *Fairchild*, where there was no suggestion that "any unresolved issue on remand would have any effect on the now-final patent validity determinations," 854 F.3d at 1366, the outcome on remand from *VirnetX I* directly affects Apple's decision whether to appeal the invalidity issue.

Indeed, in this case the issues on remand (infringement and damages) involved the same patent the jury found, and we affirmed, to be not invalid.  But in *Fairchild,* the remand concerned a counterclaim unrelated to the patent claims challenged in the reexamination proceeding, a fact this court found to be "critical[]" to its conclusion that the invalidity decision in *Power Integrations* was final.  *Fairchild*, 854 F.3d at 1365; *see also Power Integrations*, 843 F.3d at 1345 (remanding only with respect to patents that were not at issue in the reexamination request on appeal in *Fairchild*).  By contrast, this court's remand in *VirnetX I* specifically concerned the same claims we affirmed as not invalid and that were at issue in Apple's reexamination proceedings, a fact that the majority recognizes.  *VirnetX I*, 767 F.3d at 1313–14; Maj. Op. 12.  This means that *Fairchild* does not apply here as the majority asserts because the circumstances underlying the *Fairchild* decision on finality are not the same as the circumstances in this case.

Apple's decision to delay its petition for certiorari to the Supreme Court until resolution of the new trial on

infringement was reasonable because Apple can now appeal the issues of infringement and invalidity together. Whether Apple's decision was based on litigation strategy or a desire to conserve resources is not at issue. This court should not dictate to Apple when or whether it should appeal. A party should be free to develop its litigation strategy within the bounds of the law without this court's interference, and nothing in *Fairchild* suggests otherwise. To the extent that Apple decided to delay its appeal until the outcome of its trial on remand, that decision was both reasonable and consistent with the law and principles of judicial economy.

## III.

The majority's interpretation of *Fairchild* is at odds with this court's decisions in *Bettcher Industries, Inc. v. Bunzl USA, Inc.*, 661 F.3d 629 (Fed. Cir. 2011) and *Fresenius USA, Inc. v. Baxter International, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013).

In *Bettcher*, we stated that § 317(b) "prevents further reexamination proceedings once parallel federal court proceedings have reached their resolution." *Bettcher*, 661 F.3d at 646. In other words, § 317(b) "attaches only after there has been a final resolution [of the invalidity issue] . . . in federal court," and is not triggered "if there remains any time for an appeal." *Id.* (second portion quoting Manual of Patent Examining Procedure § 2686.04). The court further explained in *Bettcher* that the legislative history "confirm[s] that § 317(b) applies [only] 'after any appeals.'" *Id.* (quoting 145 Cong. Rec. 29,276 (Nov. 9, 1999); 145 Cong. Rec. 29,973 (Nov. 17, 1999)). The majority's decision that Apple's reexaminations are barred by § 317(b) is

inconsistent with *Bettcher* because time remains for Apple to file a petition for a writ of certiorari.[4]

The majority's interpretation of *Fairchild* is also inconsistent with *Fresenius*. This court stated in *Fresenius* that a decision is not final if it "leaves open the question of damages or other remedies." *Fresenius*, 721 F.3d at 1341–42 (citing 18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4432 (2d ed. 2002)); *see also id.* at 1343 ("[A] decision finding a patent not invalid but remanding for further damages proceedings is not a final judgment." (citing *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1576–77 (Fed. Cir. 1994), *as corrected on reh'g* (Sept. 14, 1994))). This court determined that there was no finality because the case was remanded to reconsider royalties and injunctive relief. *Id.* at 1333.

In deciding *Fresenius*, this court relied on the Supreme Court's decision in *Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82 (1922). We explained that in *Simmons*, the Supreme Court concluded that there was no finality with respect to the issue of infringement because "even though there had been an appellate decision *entirely resolving* the patent infringement claims, . . . there had not yet been a

---

⁴    The majority distinguishes *Bettcher* on the grounds that it dealt with estoppel under pre-AIA 35 U.S.C. § 315(c) and only addressed appellate review by the Board and this court—not the Supreme Court. Maj. Op. 18–19 & n.10. But *Bettcher* expressly construed the meaning of "final decision" as used in § 317(b) in the context of all federal courts, and that construction was part of *Bettcher*'s holding. *See Fairchild*, 854 F.3d at 1365. Although *Bettcher* did not specifically mention the Supreme Court, it held that § 317(b) "applies only when . . . *all* appeals have terminated." *Bettcher*, 661 F.3d at 646 (emphasis added). Nothing in *Bettcher* suggests that its holding was limited solely to appeals to the Board and this court.

final judgment on the unfair competition claims [and an accounting of damages],” and therefore “the Supreme Court’s intervening decision [in a separate case] was binding as to the infringement claims” because “the appellate mandate had not ended the case.” *Fresenius*, 721 F.3d at 1342–43 (citing *Simmons*, 258 U.S. at 84–91) (emphasis added); *see also id.* (“Although the interlocutory decision of [the trial court] on the question of validity and infringement was appealable, . . . the decision was not final until the conclusion of the accounting. Hence the court did not lack power at any time prior to entry of its final judgment at the close of the accounting to reconsider any portion of its decision and reopen any part of the case.” (quoting *Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1, 47–48 (1943)). As in *Simmons* and *Marconi*, even though this court affirmed the jury’s finding of no invalidity in *VirnetX I*, that decision is not final because the case was remanded for a new trial on infringement and damages.

IV.

Other Supreme Court precedent supports the conclusion that Apple has not exhausted its appellate rights. Although Apple did not petition for certiorari on the issue of invalidity after its first appeal, Supreme Court precedent establishes that it can do so now. *See Major League Baseball Players Ass’n v. Garvey*, 532 U.S. 504, 508 n.1 (2001) (per curiam) (“[W]e have authority to consider questions determined in earlier stages of the litigation where certiorari is sought from the most recent of the judgments of the Court of Appeals.”); *Bhd. of Locomotive Firemen & Enginemen v. Bangor & Aroostook R.R. Co.*, 389 U.S. 327, 328 (1967) (“[B]ecause the Court of Appeals remanded the case, it is not yet ripe for review by this Court.”); *Mercer v. Theriot*, 377 U.S. 152, 153–54 (1964) (per curiam) (“[I]t is settled that we may consider questions raised on the first appeal, as well as ‘those that were before the court of appeals upon the second appeal.’” (quoting *Hamilton–Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 257 (1916))). In

*Reece v. Georgia*, the Supreme Court explained that it has "jurisdiction to consider all of the substantial federal questions determined in the earlier stages of the litigation." 350 U.S. 85, 87 (1955) (citing *Urie v. Thompson*, 337 U.S. 163, 172–73 (1949)).   This is true even if certiorari was not sought until after a second appeal. *Id.* The law-of-the-case doctrine does not bar Supreme Court review because "[a] petition for writ of certiorari can expose the entire case to review." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (citing *Panama R. Co. v. Napier Shipping Co.*, 166 U.S. 280, 283–284 (1897)).

The majority asserts that § 317(b) concerns only "the finality of a particular issue, rather than finality of the entire case." Maj. Op. 17 n.8; *see also id.* at 20–21. Yet, the majority recognizes that "the Supreme Court may one day reconsider the invalidity issue" decided in *VirnetX I.* Maj. Op. 17.[5]  Thus, even under the majority's reading of the statute, finality is lacking with respect to the invalidity issue in this case.

The majority also suggests that Supreme Court review does not qualify as an "appeal" for purposes of § 317(b)'s estoppel provision because there is no right to Supreme Court review.  Maj. Op. 19 n.10.  This suggestion is inconsistent with Article III of the U.S. Constitution, which states that, aside from cases implicating the Supreme Court's original jurisdiction, the Supreme Court "shall have appellate Jurisdiction, both as to Law and Fact." U.S. Const. art. III.  In any case, Apple has a right to *petition* for a writ of certiorari. *See Durham v. United States*, 401 U.S. 481, 483 n.* (1971), *overruled on other grounds by Dove v.*

---

[5]    In responding to the above line of Supreme Court cases, the majority again confirms that the Court can still review the invalidity issue in *VirnetX I*, thus further undercutting its insistence that the issue was finally decided in that case. *See* Maj. Op. 15.

*United States*, 423 U.S. 325 (1976) (noting the distinction that "appeals are a matter of right while decisions on certiorari petitions are wholly discretionary," but explaining that "Congress, however, has given a *right* to petition for certiorari" (emphasis added)).  In my view, by determining that this court's affirmance of no invalidity in *VirnetX I* terminated Apple's right to seek certiorari, the majority's conclusion intrudes on the Supreme Court's constitutional prerogative whether to take up the invalidity issue.

V.

The majority's decision also intrudes on long established principles of judicial economy because it fosters piecemeal litigation.  Under the majority's approach, once this court decides an issue of invalidity on appeal, a party is required to immediately petition for certiorari to the Supreme Court—regardless of the status of the other issues in the case.  This approach stands in stark contrast to "the general judicial bias against piecemeal litigation." *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 570 (1983); *see also Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 439 (1956) (noting the courts' longstanding "hostility toward piecemeal appeals"); *Panama*, 166 U.S. at 284 ("[A]s was recently said in the case of *The Conqueror*, 17 Sup. Ct. 510, [the writ of certiorari] is and generally should be issued only after a final decree.").

In *McLish v. Roff*, the Supreme Court explained that "[f]rom the very foundation of our judicial system the object and policy . . . have been to save the expense and delays of repeated appeals in the same suit, and to have the whole case and every matter in controversy in it decided in a single appeal."  141 U.S. 661, 665 (1891).

The majority contends that to hold that § 317(b) does not apply in this case will itself lead to duplicative litigation because waiting "until any prospect of future Supreme Court review is eliminated" will cause § 317(b) "estoppel [to] rarely apply."  Maj. Op. 17 (internal citation and

quotation marks omitted).  But not every appeal that reaches this court results in a remand, and even if that were the case, estoppel would still apply once all appeals are terminated.  It is not rare that the Supreme Court denies a party's last petition for certiorari and litigation concludes.  But that step is for the Supreme Court to take—not this court.